Ismael Rivera, demandante y apelado, *v.* Eloísa Casiano de Toro y su Esposo Pascual Toro y la Sociedad de Gananciales que Ellos Constituyen, demandados y apelantes.

Núm. 9485.—*Sometido:* Noviembre 3, 1947. *Resuelto:* Febrero 13, 1948.

*Enrique Báez García,* abogado de los apelantes; *Ildefonso Freyre* abogado del apelado.

EL JUEZ PRESIDENTE SEÑOR TRAVIESO emitió la opinión del tribunal.

Ismael Rivera, policía insular, radicó una demanda de daños y perjucios ante la Corte de Distrito de Mayagüez alegando que el 6 de octubre de 1945, como una de las funciones de su cargo, acompañó a otros miembros de la Policía Insular a ejecutar una orden de allanamiento en la residencia de los demandados; que en 9 de octubre de 1945, la demandada maliciosamente y sin que existiera causa probable ni motivo alguno para ello, juró e hizo radicar en la Corte Municipal de San Germán, una denuncia criminal imputando al demandante la comisión de un delito de acometimiento y agresión grave en contra de la demandada consistente en que dicho policía había acometido y agredido con las manos a la denunciante, agarrándola fuertemente por un brazo, empujándola y metiéndole las manos por dentro del seno, causándole varios rasguños y quedándose ella con fuertes dolores en todo el cuerpo; que a virtud de dicha denuncia el demandante fué arrestado y tuvo que prestar una fianza para poder permanecer en libertad; que en 9 de enero de 1946 la demandada presentó una moción ante la Corte Municipal de San Germán en la cual informaba a la corte que ella había sufrido un error por cuanto el policía Ismael Rivera no había intervenido para nada con ella y solicitó de la corte que decretara el archivo del caso, lo cual se hizo; que la actua-

ción de los demandados expuso al demandante al menosprecio, odio y descrédito del público, le produjo intenso dolor moral, profunda agonía mental y depresión en su ánimo y le causó daños y perjuicios ascendentes a la cantidad de $5,000.

Contestaron los demandados aceptando el hecho de la radicación de la denuncia por la codemandada Eloísa Toro pero negando que dicha denuncia fuera presentada maliciosamente y sin causa probable; que ésta fué presentada después de haber la codemandada consultado con un abogado; y que la denunciante estaba protegida por el consejo de un abogado. Celebrado el juicio, la corte dictó sentencia condenando a los demandados a pagar al demandante ''$3,500 de principal, con intereses legales sobre dicha suma desde la fecha de la sentencia hasta su total pago y más las costas, gastos, desembolsos y $300 para honorarios de abogado.''

Señalan los apelantes varios errores que a su juicio fueron cometidos por la corte inferior, dos de los cuales son (1) ''que la Corte de Distrito de Mayagüez cometió error al declarar que la demandada actuó con malicia'', y (2) que ''cometió error al declarar que la demandada Eloísa Casiano no estaba protegida por el consejo de su abogado.''

Arguye el apelante que es doctrina establecida la de que en una acción por persecución maliciosa, el demandado está protegido por el consejo de un abogado; que la absolución del policía Rivera no se debió al hecho de que no se hiciera una relación amplia, completa y veraz sino al hecho inexpugnable de que la demandante sufrió un error en cuanto al nombre del policía; que en este caso el factor ''malicia'' sucumbe ante el factor ''error'' y que la forma misma de ocurrir los hechos demuestran falta de malicia.

La prueba ofrecida en este caso, en síntesis, demostró que el demandante, en compañía del detective Fratícelli y otros dos miembros de la Policía Insular, allanaron mediante una orden la residencia de los demandados; que encontraron a la señora de Toro sola en la sala; que ésta

corrió hacia el cuarto dormitorio y fué seguida por el detective Fraticelli; que ya en el cuarto se entabló una discusión entre Fraticelli y la demandada debido a que él le reclamaba a ella ciertos papeles que ella recogió de sobre la cama y se los metió en el seno; que los otros agentes policíacos permanecieron fuera del cuarto y no vieron lo que allí ocurrió, pero sí oyeron la discusión; que dichos agentes una vez practicada la búsqueda, sin haber hallado material de bolita o bolipul alguno, abandonaron la casa todos juntos; que dos días después de haber ocurrido esto, la demandada, alegando haber sido acometida y agredida por uno de los policías, visitó al Lic. García Yanguas haciéndole una exposición de hechos al efecto de que ella fué agredida por el policía Ismael Rivera, en el cuarto de su casa, cuando éste trató de sacarle algo que ella tenía en el seno; que dicho abogado la aconsejó en el sentido de que presentara una denuncia contra dicho policía por acometimiento y agresión grave; que García Yanguas preparó la denuncia y se la entregó a la demandada con instrucciones de que fuera a jurarla ante el Juez de Paz de Sabana Grande, lo cual hizo; que el día señalado para el juicio y estando en la corte la demandada, en compañía de su abogado, éste le pidió que le señalara el policía que la había agredido y ella le señaló a Fraticelli en vez de Ismael Rivera; que se dieron cuenta entonces de que habían denunciado a un policía distinto y se solicitó de la corte que se archivara el caso y se archivó.

Ante esa prueba la corte inferior se expresó así: ''En cuanto a la defensa de que la demandada actuó por consejo de abogado la Corte desecha la misma por entender que la demandada no hizo al Lic. García Yanguas una relación amplia, completa y veraz de todos los hechos del caso. La Corte ha llegado a la conclusión de que la demandada fué donde el Lic. García Yanguas con la idea premeditada de formular una denuncia contra cualquiera de los miembros de la policía como un desquite por la ejecución de la orden de allanamiento que se había ejecutado . . .''

La demandada apelante ofreció en evidencia el testimonio del Lic. García Yanguas, el cual fué como a continuación copiamos:

"P.—¿Usted tiene la bondad de explicarle a la Corte cuál fué su intervención en este caso?

R.—Bueno, yo me encontraba en mi oficina de abogado-notario —parte del día estoy en la oficina de Juez de Paz y parte en mi oficina de abogado-notario—y encontrándome en mi oficina de abogado-notario llegó la señora, en compañía de otra jovencita, a consultarme sobre hechos que habían ocurrido en Sabana Grande.

Ledo. Freyre: ¿Qué ella decía?

Testigo: Que ella decía, hechos que ella manifestaba que habían ocurrido en Sabana Grande. Me hizo una amplia exposición de hechos y después de oírla le dije: si los hechos, señora, son tal como usted los expone, entonces entiendo que si ese policía hizo eso se extralimitó en las funciones de su cargo y usted puede denunciarlo si quiere."

Más adelante continúa declarando como sigue:

"P. ¿Entonces qué ocurrió en la Corte Municipal?

R. Al llegar allí a la corte yo le pedí a ella que me señalara al policía y me señaló a otro policía.

P. ¿A qué policía le señaló?

R. Ella señaló a Fraticelli. Entonces yo le dije: Mire, ése no es el policía que usted denunció. Usted a quien denunció fué al policía Ismael Rivera. Entonces ella se puso las manos en la cabeza y dijo: '¡ay! ¿cómo arreglaremos eso?' Entonces yo me puse a pensar qué hacer. Entonces hablé con el juez y le expliqué al juez lo que pasaba.

P. ¿Y los policías dónde estaban?

2. Allí estaban Fraticelli y este señor también estaba, juntos en la oficina del juez todos. Entonces yo le dije: Tiene que archivar el caso. Este caso está contra un policía distinto. Entonces en la misma maquinilla del secretario me senté y ahí, rápidamente, a base de lo que ella me decía: que había sufrido un error en cuanto al nombre del policía que había denunciado, le preparé una moción solicitando de la corte, que en vista del error habido, ordenara el sobreseimiento y archivo del caso, previo pago de las costas. Entonces allí mismo, delante de la secretaria, ella firmó y juró la moción, y firmé yo como abogado, y el caso se archivó."

Cualquier persona que iniciare o comenzare una acción criminal contra otra que no fuere culpable del delito imputado, es responsable a dicha persona por el daño sufrido por ella si la acción criminal fué iniciada sin causa probable, con malicia, y es decidida favorablemente al acusado. *Restatement of the Law of Torts,* Vol. III, pág. 382. La malicia puede ser expresa o tácita y se presume cuando se imputa la comisión de un acto constitutivo de delito a un extraño. *Casanova* v. *González Padín,* 47 D.P.R. 488. En este caso se formuló una denuncia de acometimiento y agresión grave contra el demandante, equivocadamente y por error. La demandada no hizo las gestiones pertinentes para averiguar con certeza el nombre de su presunto agresor. Descansó en la información suministrádale por un espectador que estaba dentro de un grupo de personas que se hallaba frente a la casa de ella cuando se efectuaba el allanamiento. La apelante pudo, mediante una ligera investigación y a través de fuentes confiables, cerciorarse del nombre de la persona a quien ella intentaba denunciar. Bajo estas circunstancias tenemos que presumir que ella actuó maliciosamente. Sobre este particular, 34 Am. Jur. pág. 735, sec. 51, dice lo siguiente:

"La omisión, por parte de una persona que ha recibido informes tendientes a demostrar la comisión de un delito, de hacer la investigación adicional que una persona ordinariamente prudente hubiese hecho bajo las mismas circunstancias, antes de instituir un procedimiento, la hace responsable por haber procedido sin causa probable. Uno no puede confiar sin investigación adicional en los informes de otra persona, cuando los informes recibidos son tales que inducen a una persona prudente y cuidadosa a investigar."

Para que la defensa de haberse procedido por consejo de abogado pueda interponerse con éxito es necesario probar claramente que se hizo una relación veraz, total y completa al abogado con quien se aconsejó y que se procedió a denunciar después de haber hecho tal consulta de buena fe. En el caso de *Vélez* v. *Bonelli,* 46 D.P.R. 28, se resolvió (copiando

del sumario) que el consejo legal en que se basó una persona para procesar a otra por hurto, no la ampararía en la acción de daños y perjuicios seguídale por persecución maliciosa, cuando aparece que no se expusieron ampliamente y con veracidad todos los hechos a los letrados que dieron tal consejo, o que se dió basado en un estado de hechos que no existió, o después de la radicación de la denuncia que motivó tal acción. Y en *Restatement of the Law, Torts,* Vol. III, pág. 420, refiriéndose a esta misma cuestión, aparece que:

"La ocultación de un hecho que debería ser reconocido como substancial a la exposición de hechos como conocidos por el cliente pero de los cuales éste tiene una mera sospecha o sobre los cuales como hombre razonable él debería reconocer que necesitan investigación adicional, destruye la protección dada por el consejo de abogado."

No hay duda de que la demandada en el caso de autos no le hizo una exposición amplia y completa de todos los hechos al Lic. García Yanguas, puesto que no le informó correctamente el nombre de su alegado agresor. No erró la corte, por lo tanto, al declarar que la demandada no estaba protegida por el consejo de su abogado.

Como tercer señalamiento se alega que la corte inferior cometió error "al declarar con lugar la demanda contra Pascual Toro y contra la sociedad de gananciales porque la demanda ni los hechos probados constituyen una causa de acción contra ellos a favor del demandante."

No tiene razón el apelante. Hubo prueba, ofrecida por el demandante, al efecto de que Pascual Toro instigó, aconsejó y se puso de acuerdo con su esposa para formular la denuncia. Dicha prueba fué creída por la corte inferior, la cual, a este respecto, se expresó así: "La corte no tiene duda, por el resultado de la evidencia, que ambos demandados se pusieron de acuerdo para establecer la denuncia criminal contra el demandante Ismael Rivera." El juez sentenciador dió entero crédito a la prueba ofrecida por el demandante y concluyó que Pascual Toro fué responsable al igual

que su esposa de formular la denuncia contra el demandante. Dicha conclusión está sostenida por la prueba y no habiéndose demostrado la existencia de pasión, prejuicio o parcialidad, no la alteraremos en apelación. Siendo esto así, la demanda aduce hechos constitutivos de causa de acción contra el codemandado Pascual Toro.

▮▮▮ Alegan los apelantes que no existe causa de acción contra la sociedad de gananciales. La sociedad es una entidad completamente distinta de la de los cónyuges que la componen. *Ex Parte García,* 54 D.P.R. 503. No es, por lo tanto, responsable por los daños causados por alguno de los miembros que la componen. Sin embargo, cuando el cónyuge causante de los daños no tiene bienes privativos o éstos son insuficientes, podrá repetirse contra los gananciales. Así lo dispone el Código Civil, edición de 1930, en el artículo 1310, el cual, en su parte pertinente, reza así:

". . . Sin embargo, el pago de las deudas contraídas por el marido o la mujer con anterioridad al matrimonio, y el de las multas y condenas que se le impongan, podrá repetirse contra los gananciales después de cubiertas las atenciones que enumera el artículo 1308, si el cónyuge deudor no tuviese capital propio o fuera insuficiente; pero al tiempo de liquidarse la sociedad se le cargará lo satisfecho por los conceptos expresados."

A este respecto, Manresa, en sus Comentarios al Código Civil, Vol. 9, pág. 633, (edición de 1904) refiriéndose al artículo 1410, equivalente al 1310 de nuestro Código Civil, dice lo siguiente:

"Las deudas y obligaciones anteriores al matrimonio, y las multas y condenas pecuniarias impuestas durante el mismo, son a cargo del cónyuge deudor o responsable. Debe pagar con sus propios bienes.

"Pero puede ocurrir que no sean suficientes esos bienes o que no los tenga, y existan, en cambio, bienes gananciales, que, por serlo, deben pertenecer a ambos esposos: La ley prevé este caso y dispone que en él pueda repetirse contra los bienes gananciales, después de cubiertas las atenciones que enumera el art. 1408, con la condición de que al tiempo de la liquidación de la sociedad se cargue al cón-

yuge responsable lo satisfecho por él por los conceptos expresados.

"El precepto se presenta tan natural, que a primera vista no puede menos de sentirse su justicia. La sociedad no es la obligada al pago, pero median intereses legítimos, hay acreedores que no deben perder sus créditos, hay que reparar un mal o un daño, o indemnizar un perjuicio, y la ley ante la carencia de bienes privativos del cónyuge deudor o responsable, y la existencia de gananciales sobrantes, ordena el pago, la reparación o la indemnización que procedan a costa de la sociedad, pero disponiendo que en su día se le descuente a ese cónyuge en su respectivo haber.''

█ El próximo señalamiento está dirigido a la insuficiencia de la prueba.

Hemos hecho un detenido estudio de la prueba aportada en esté caso y encontramos que la misma es suficiente para sostener las conclusiones a que llegó la corte inferior. No se nos ha demostrado la existencia de pasión, prejuicio o parcialidad. Por tanto, deben ser sostenidas.

█ Como último señalamiento se alega que la corte inferior cometió error ''al conceder la suma de $3,500 de indemnización más $300 de honorarios de abogado, siendo esta suma exagerada.'' Dicha suma es, a nuestro juicio, excesiva. *La sentencia recurrida debe ser modificada en el sentido de reducir la indemnización a la suma de $750 y así modificada se confirma.*