HÉCTOR M. LUGO MONTALVO, ETC., ET AL., demandantes y recurrentes, *v.* JACINTO GONZÁLEZ MAÑÓN ET AL., demandados y recurridos.

*Número:* R-75-59          *Resuelto:* 10 de noviembre de 1975

*Michel Rachid Piñeiro, José R. Fournier, E. Fournier de Rivera* y *José R. Fournier Torres,* abogados de los recurrentes; *Enrique González,* abogado de los recurridos.

EL JUEZ ASOCIADO SEÑOR RIGAU emitió la opinión del Tribunal.

Se trata de una acción de daños contra el Dr. Jacinto González Mañón personalmente y contra la sociedad de gananciales que tiene constituida con su esposa, Paquita Carrillo de González, por alegados daños causados por el Dr. González Mañón mientras éste ejercía su profesión de médico en su consultorio. Básicamente se trata de un caso de alegada mala práctica o impericia profesional (*malpractice*).

A solicitud de dicha sociedad de gananciales, mediante sentencia parcial, la ilustrada Sala sentenciadora desestimó la demanda en cuanto a la sociedad de gananciales y la dejó subsistente en cuanto al codemandado Dr. González. Se basó

para ello el tribunal de instancia en el Art. 1310 del Código Civil, 31 L.P.R.A. sec. 3663, el cual lee como sigue:

"El pago de las deudas contraídas por el marido o la mujer antes del matrimonio no estará a cargo de la sociedad de gananciales.

Tampoco lo estará el de las multas y condenas pecuniarias que se les impusieren.

Sin embargo, el pago de las deudas contraídas por el marido o la mujer con anterioridad al matrimonio, y el de las multas y condenas que se le impongan, podrá repetirse contra los gananciales después de cubiertas las atenciones que enumera la sec. 3661 [Art. 1308, C.C.], si el cónyuge deudor no tuviese capital propio o fuera insuficiente; pero al tiempo de liquidarse la sociedad se le cargará lo satisfecho por los conceptos expresados." [1]

El primer párrafo del citado artículo no está aquí envuelto. Es el segundo el vital para el presente recurso y cuya interpretación debemos hacer. Hay que precisar qué son "multas" y, especialmente en este caso, qué son "condenas pecuniarias."

■ No parece haber discrepancia en la jurisprudencia y entre los tratadistas en que "multas" se refiere a penalidades económicas impuestas por la comisión de delitos públicos. Esto es, que son penalidades por crímenes. Tampoco hay discrepancia en que dichas multas son de carácter personal y debe pagarlas el cónyuge convicto y multado y no la sociedad de gananciales. [2] Aunque precisa hacer la salvedad que otro

---

[1] Nuestro Art. 1310 es igual al 1410 español. Tiene antecedentes en el Fuero Real (1254) Libro III, Tit. XX, Ley 14; en la Ley 207 del Estilo; y en las Leyes de Toro (1505), Leyes 77 y 78. Las Leyes del Estilo (estilo en ese contexto quiere decir observancia) eran en gran parte decisiones del tribunal de la Corte que formaron jurisprudencia para la interpretación del Fuero Real. Minguijón, *Historia del Derecho Español*, 4ta. ed. rev. (1953) pág. 92. Para los textos de dichos antecedentes puede verse Fortuny, *Régimen de Bienes en el Matrimonio* (1962) pág. 325.

[2] Reyes Monterreal, *El Régimen Legal de Gananciales* (1962), pág. 247; Cossio, *La Sociedad de Gananciales* (1963), Tomo 50, Vol. I, pág. 96 y ss. del *Tratado Práctico y Crítico de Derecho Civil* del Instituto

tratamiento podría darse si el marido y la mujer actuasen de común acuerdo en la perpetración de un crimen—tráfico ilegal de drogas, contrabando, asesinato, etc.

Así, por ejemplo, en *Rivera* v. *Casiano*, 68 D.P.R. 190 (1948), uno de los señalamientos de error fue al efecto de que el tribunal de instancia erró al declarar con lugar la demanda en daños contra el marido y también contra la sociedad de gananciales. Resolvimos que no tenía mérito el planteamiento porque la prueba demostró que el marido "instigó, aconsejó y se puso de acuerdo con su esposa" para llevar a cabo los hechos que motivaron la demanda.

Pero es en relación con el concepto de "multas y condenas" en donde no hay unanimidad de criterio entre los autores y en el cual la interpretación del concepto va mano a mano con la situación fáctica a la cual se vaya a aplicar. Puede decirse que probablemente excepto Manresa, los tratadistas afinan su tratamiento de la cuestión hasta un grado en que sus conclusiones son compatibles con una solución justa.

En su breve comentario sobre el particular, Manresa, obra citada, pág. 766 *in fine*, se limita a seguir la escueta letra del artículo y expresa que "Cuando se trata de tales condenas y multas, la ley no puede presumir que ha nacido la obligación en interés de la comunidad." Las innumerables situaciones de la vida no pueden todas encerrarse en tan dogmática fórmula. Ya vimos como en el caso de multas penales la situación no siempre es necesariamente así. Tampoco lo es en el caso de las condenas por responsabilidad civil, y así lo reconoce la mayoría de los autores.

---

Nacional de Estudios Jurídicos; Lacruz Berdejo y Sancho Rebullida, *Derecho de Familia* (1966), págs. 209–210; Puig Brutau, *Fundamentos de Derecho Civil* (1967), Tomo 4, Vol. 1, pág. 712; Manresa, *Comentarios al Código Civil Español*, Tomo IX, 6ta. ed. rev. (1969), pág. 766; Scaevola, *Código Civil*, Tomo XXII, 2da ed. (1967), pág. 546; Fortuny, *Régimen de Bienes en el Matrimonio* (1962), págs. 327–328; Borrel, *Derecho Civil Español* (1954), Tomo IV, pág. 443.

Como señala Castán, "El intérprete debe estudiar la ley sin desligarla de su origen, ya que ha de conocer cuál es la voluntad del legislador, qué motivos la determinaron, qué circunstancias la exigieron; pero tampoco aislándola de la realidad en el momento de su aplicación, pues sólo así podrá adaptarla a las circunstancias sociales." [3]

El mismo autor expresa que es de tener en cuenta que el legislador estatuye para el porvenir pero no puede suponerse que sea voluntad del legislador dictar fórmulas cerradas que inmovilicen el Derecho y le priven de elasticidad. [4]

El Código Civil, aunque su reexamen es ya harto necesario, es una de nuestras piezas legislativas más terminadas y uno de los elementos más preciados de nuestro acervo cultural. Para conservarlo tenemos que interpretarlo con imaginación y en forma creadora. Es obvio que el medio social en que vivimos y en el cual opera el Código Civil es muy diferente a aquella sociedad agrícola del ochocientos que produjo dicho Código. Sin embargo, el Código está escrito en lenguaje sencillo y abarcador que permite, dentro de sus márgenes el desarrollo de la jurisprudencia que lo revitaliza y le asegura su permanencia. *Borges* v. *Registrador*, 91 D.P.R. 112, 132 (1964) *in fine*.

Puig Brutau, obra citada, pág. 712, luego de expresar que las multas y condenas pecuniarias incluyen los casos de responsabilidad por culpa extracontractual, cita con aprobación a Lacruz en el sentido de que si la mujer ha compartido la culpa del marido, podrá irse contra los gananciales directamente, sin previa excusión en los privativos del marido.

■ Lacruz y Sancho Rebullida, obra citada, pág. 209, se manifiestan en contra de una interpretación restrictiva del artículo (1410 español, 1310 puertorriqueño) sin razonar suficientemente su solución, lo que a juicio de dichos autores,

---

[3] *Teoría de la Aplicación e Investigación del Derecho* (1947), pág. 229.

[4] Castán, obra citada, pág. 232.

y nuestro, presenta notables inconvenientes. Dichos autores son del criterio de que las condenas pecuniarias incluyen las responsabilidades procedentes de culpa extracontractual y añaden, a la pág. 210 *ab initio*:

"Sin embargo, cuando la culpa en que haya incurrido el marido en la gestión de intereses comunes resulte en algún modo compartida por la mujer, no se verificará la computación ordenada por el art. 1410, y será admisible la ejecución dirigida directamente contra los bienes gananciales, sin hacer excusión en los del marido y sin que nada pueda reclamar la esposa."

Añaden los citados autores, por vía de ejemplo, escolio 4 de la pág. 210, que en casos de sanciones impuestas por infracción de las leyes sobre abastecimientos, al ser dichas infracciones consecuencia de una gestión, ilícita pero habitual, del negocio que alimenta la masa de gananciales y de cuyas ganancias se aprovecha toda la familia (que, por lo demás, no puede desconocer del todo la forma de desarrollarse las actividades mercantiles del jefe), deben pesar sus consecuencias económicas sobre todo el patrimonio familiar. Consideran esos autores que en casos así sería injusto que soportase tales consecuencias económicas únicamente el marido, quien corrió el riesgo en beneficio del consorcio.

Cossio, luego de repetir el concepto clásico de que las multas y condenas pecuniarias representan algo personal del cónyuge que con su falta o delito da lugar a ellas, expresa, obra citada, pág. 100 *in fine*:

"Nos parece claro que cuando se trata de condenas producidas en procedimientos civiles, no puede, en principio, admitirse se encuentren comprendidas en el precepto que examinamos. Unicamente cabría pensar en tal posibilidad, en dos diferentes supuestos: el de condena en costas, como sanción de la temeridad (no en el de que éstas sean preceptivamente impuestas por la ley) y el de responsabilidades civiles derivadas de delito o falta pero que hayan sido exigidas por vía civil. Ciertamente que la S. de 4 de octubre de 1910 antes citada, nos dice que el pago de las costas procesales es carga de la sociedad legal, consecuencia de la

obligación de prestar 'litis expensas,' pero esto nada tiene que ver con la condena en costas que constituye una sanción del dolo procesal, y una auténtica penalidad civil para la parte condenada a su pago."

Parece claro, pues, que la doctrina entiende, creemos que con razón, que cuando la multa o condena es motivada por la comisión de un delito, como regla general—pues hay excepciones, como vimos—la responsabilidad es personal del cónyuge que lo cometió; pero en casos de responsabilidad civil extracontractual, la responsabilidad será personal o de la sociedad de gananciales según los hechos que la produjeron. Generalmente se reconoce que si la acción o gestión del marido aprovecha económicamente la masa ganancial, la responsabilidad también será de cargo de dichos bienes. Como expresa Scaevola, "quién está a las ganancias, debe estar a las pérdidas," precepto que considera que desde muy antiguo rige en materia de sociedad. Obra citada, pág. 477.

Nuestra jurisprudencia sobre el particular no es incompatible con lo antes expuesto. En *Rivera* v. *Casiano*, supra, ambos cónyuges participaron en los hechos torticeros y se sentenció civilmente al marido y a la sociedad de gananciales.

En *Rivera* v. *De Martínez*, 70 D.P.R. 482 (1949) se trataba de una acción de daños basada en calumnia y arresto ilegal. La doméstica demandó a la ama de la casa porque ésta la acusó de hurtar un reloj. En el pleito civil venció la demandante. Se levantó como error que no se demandó al marido de la demandada. Se resolvió que no se cometió el error porque el pleito envolvía solamente la responsabilidad individual de la esposa y podía ser demandada en su propio nombre. Se confirmó la sentencia en daños.

En *Lugo Guzmán* v. *Santiago Albino*, 87 D.P.R. 623 (1963), la situación se presentó muy clara. No se demandó a la sociedad de gananciales sino al marido y a la mujer individualmente. La demanda en daños se basó en que la mujer codemandada privó de la vida al causante de los demandan-

tes. A la fecha en que se inició la acción los codemandados se habían divorciado. Se revocó la sentencia en daños en cuanto al codemandado.

En el caso de autos se trata de un cónyuge cuya profesión es la medicina. Mientras esté casado todo lo que gane en el ejercicio de su profesión va al haber de la sociedad de gananciales. En el curso de su práctica profesional puede incurrir en responsabilidad civil por mala práctica. (5) ¿Debe responder él solo, con sus bienes privativos, o debe tener el concurso de la sociedad de gananciales para la cual trabaja? Entendemos que este caso cae dentro de los criterios antes expresados en el sentido de que su gestión económica profesional beneficia a la masa ganancial y ésta debe también responder a la hora del débito.

*Se revocará la sentencia parcial recurrida y se devolverá el caso al tribunal de instancia para ulteriores procedimientos.*

El Juez Presidente Señor Trías Monge no intervino.

(5) No estamos prejuzgando en absoluto los méritos del caso. Decimos "puede" en forma hipotética y solamente a los fines de plantear el problema jurídico que discutimos.