ASOCIACIÓN DE PROPIETARIOS DEL CONDOMINIO VILLAS DE PLAYA I DE DORADO DEL MAR, INC., demandantes y recurrentes, *v.* SANTA BÁRBARA COMPANY OF PUERTO RICO, INC. y OTROS, demandados y recurridos.

*Número:* R-80-375 *Resuelto:* 26 de enero de 1982

*Rafael A. Soto Silva, Hugo Rodríguez* y *Jorge Vélez Nieves*, abogados de los peticionarios; *Rafael A. Carazo Hernández*, de *Dubón, González & Vázquez*, abogado de los recurridos Ariel Gutiérrez y Leticia Brunet; *Arturo Aponte Parés*, abogado de los recurridos Alberto Hernández y Alberto Hernández Real Estate.

EL JUEZ ASOCIADO SEÑOR NEGRÓN GARCÍA emitió la opinión del Tribunal.

La Asociación de Propietarios del Condominio Villas de Playa I de Dorado del Mar, Inc. demandó, entre otros, a la constructora Santa Bárbara Company of P. R., Inc., Ariel Gutiérrez, la sociedad legal de gananciales compuesta por éste y su esposa Leticia Brunet imputándoles fraude al certificar que la construcción del Condominio Villas de Playa I, en Dorado, se realizó de acuerdo a los planos y especificaciones aprobadas por la Administración de Reglamentos y Permisos; haber sustituido materiales por unos de inferior calidad y costo; la existencia de defectos y vicios de construcción, construcciones ilegales e incompletas; incumplimiento de contratos y otras alegaciones.

Contra Gutiérrez, específicamente, se alegó que firmó y certificó indebidamente que las unidades de vivienda estaban construidas de acuerdo con los planos y especificaciones conociendo la sustitución de los materiales, los vicios de construcción y otras irregularidades. No está en disputa

que Gutiérrez actuó en sus funciones como miembro de la entidad profesional denominada *Sociedad E.H.G. Arquitectos e Ingenieros* que a su vez era la agente de la codemandada Santa Bárbara Company of P. R., Inc.

En contestación a la demanda se produjeron seis mociones de sentencia sumaria solicitando, por diversos fundamentos, la desestimación de las diferentes causas de acción contra los distintos demandados. Todas fueron resueltas por la ilustrada sala de instancia. En cuanto al codemandado Gutiérrez el tribunal denegó su pedido bajo la tesis de que la determinación de su responsabilidad, si alguna, debía establecerse en un juicio plenario. Sin embargo, desestimó en cuanto a las codemandadas Leticia Brunet y sociedad de gananciales Gutiérrez-Brunet, resolviendo —a la luz de un examen de las alegaciones y normas jurídicas correspondientes— que las actuaciones personales profesionales, supuestamente realizadas por Gutiérrez como miembro de una sociedad de arquitectos e ingenieros, no podían dar margen para imponerles responsabilidad.

La Asociación de Propietarios recurre ante nos sosteniendo que erró el tribunal de instancia al concluir que dicha sociedad legal de gananciales no responde por actos culposos o negligentes de uno de sus componentes, realizados como miembro de una sociedad civil de arquitectos e ingenieros.

## I

En buena metodología y lógica adjudicativa hemos de decidir inicialmente si tenemos jurisdicción para entender en el recurso. La sociedad legal Gutiérrez-Brunet, en su oposición, alega que carecemos de la misma aduciendo que la Sentencia Parcial y Resolución impugnada nunca tuvo carácter de *final* y, por tanto, no está sujeta a revisión. Se ampara en la Regla 43.5 de Procedimiento Civil que lee:

43.5 *Sentencias sobre reclamaciones o partes múltiples*
 Cuando un pleito comprenda más de una reclamación, ya

sea mediante demanda, reconvención, demanda contra co-parte o demanda contra tercero o figuren en él partes múltiples, el tribunal podrá dictar sentencia final en cuanto a una o más de las reclamaciones o partes sin disponer de la totalidad del pleito, *siempre que concluya expresamente que no existe razón para posponer dictar sentencia sobre tales reclamaciones hasta la resolución total del pleito, y siempre que ordene expresamente que se registre sentencia.*

*Cuando se haga la referida conclusión y orden expresa, la sentencia parcial dictada será final para todos los fines en cuanto a la controversia en ella adjudicada,* y una vez sea registrada y se archive en autos copia de su notificación, comenzarán a correr en lo que a ella respecta los términos dispuestos en las Reglas 47, 48 y 53.

En ausencia de la referida conclusión y orden expresa, cualquier orden o cualquier otra forma de decisión, no importa cómo se denomine, que adjudique menos del total de las reclamaciones, *no terminará el pleito* con respecto a ninguna de las reclamaciones y la orden u otra forma de decisión *estará sujeta a reconsideración por el tribunal que la dicte en cualquier momento antes de registrarse sentencia adjudicando todas las reclamaciones.* (Énfasis nuestro.)

El texto transcrito es claro. Para que una sentencia dictada en cuanto a una o más de las reclamaciones o partes comprendidas en un pleito pueda ser final, sin que se disponga de su totalidad, deberá expresamente contener una conclusión del tribunal de que "no existe razón para posponer [la . . .] hasta la resolución total del pleito. . .".

Los recurridos nos señalan que ausente ese pronunciamiento y el que no se ordenara ni verificara el registro de la sentencia, impide que el dictamen advenga final y, por ende, el término para interponer un recurso de revisión ante el foro apelativo no comienza a correr. Apoyan su contención en lo resuelto en *Barrientos* v. *Gob. de la Capital*, 97 D.P.R. 552 (1969), reiterado en *Cortés Román* v. *E.L.A.*, 106 D.P.R. 504 (1977).

Bajo un enfoque de estricta literalidad, hemos de reconocer que nos inclinaríamos a darle la razón a los recurridos. No obstante, se impone un resultado distinto al eva-

luar e interpretarlo tomando como marco de referencia el exordio consagrado en la Regla 1 de Procedimiento Civil de garantizar a las partes litigantes un proceso judicial rápido, justo y económico. Veamos.

Primeramente, es menester aclarar que estamos ante un caso que envuelve solamente una reclamación pero que involucra partes múltiples. Antes de la revisión general que sufrieron nuestras reglas en 1979, la Regla 44.2 de 1958, hoy Regla 43.5, se refería tan solo a sentencias sobre reclamaciones múltiples. Por eso es que ninguna decisión previa nuestra resolvió si una sentencia que adjudica menos de la totalidad de varias reclamaciones y carece de la certificación de finalidad, puede o no ser revisada *al momento de dictarse.* La jurisprudencia estableció: (a) que puede ser revisada dentro del término apelativo contado a partir del archivo en autos de la notificación de la sentencia que pone fin a *todo* el pleito, porque hasta entonces no comienza a correr dicho término; o sea, que el perjudicado por la decisión *no está obligado* a solicitar revisión de la sentencia parcial al momento de dictarse a menos que se haga la certificación de finalidad, *Barrientos* v. *Gob. de la Capital,* supra; y (b) que esta clase de sentencia parcial es distinta de aquella que resuelve una porción de una sola reclamación. A una sentencia parcial de este tipo no le aplica la regla, y no puede convertirse en final hasta que se adjudica toda la reclamación o pleito. Las que resuelven la totalidad de una o más de entre varias reclamaciones se convierten en finales si se hace la certificación y se ordena su registro. *Dalmau* v. *Quiñones,* 78 D.P.R. 551 (1955); *Cortés Román* v. *E.L.A., supra.* (¹)

El único caso que hemos encontrado que se refiere, incidentalmente, a la situación de una sentencia desestima-

_____

(¹)*Dalmau* se decidió bajo las Reglas de Enjuiciamiento Civil de 1943 y el Código de Enjuiciamiento de 1933, cuya versión no contenía el requisito de certificación de finalidad, sino meramente autorizaba al tribunal a emitir dichas sentencias.

toria respecto a una parte en un pleito que involucraba partes múltiples y en donde específicamente nos referimos al problema que hoy confrontamos es *Feliciano Ruiz* v. *Alfonso Develop. Corp.*, 96 D.P.R. 108 (1968). Allí se instó demanda contra una corporación y dos personas naturales. El tribunal de instancia desestimó la acción respecto a éstas en vista de que la demanda no contenía alegación alguna que las relacionara con la reclamación ejercitada. Posteriormente —ante la demostrada disolución de la corporación demandada— los demandantes solicitaron permiso para incluirlas nuevamente. El foro de instancia desestimó el pleito a base de la prueba producida sobre la disolución de la corporación y denegó la inclusión solicitada al aplicar, respecto a las dos personas previamente demandadas, la doctrina de cosa juzgada.

Revocamos en virtud de que en esas circunstancias no aplicaba la doctrina de cosa juzgada por ser la "sentencia" desestimatoria anterior un incidente procesal dentro del mismo pleito y no un pleito anterior distinto. Dijimos, además, que "[era] discutible si en ausencia de una *determinación expresa* al efecto de que no existía razón para posponer el dictar sentencia, la [sentencia desestimatoria anterior] puede considerarse como una *firme*, elemento éste esencial para que prospere la defensa de cosa juzgada". Advertimos que había que determinar si el lenguaje "reclamaciones múltiples" utilizado en nuestra Regla 44.2 incluía "partes múltiples" y señalamos que en la jurisdicción federal la interrogante había sido resuelta mediante una referencia expresa a "partes múltiples" incorporada a la Regla 54(b) federal en virtud de una enmienda de 1961. Concluimos diciendo que "[c]omo el propósito que se persigue es una orientación definida sobre el carácter de final y firme de una sentencia a los fines de determinar su carácter de revisable, una enmienda similar es deseable en nuestras Reglas. *Sepúlveda* v. *Mejías,* 86 D.P.R. 600 (1962)

y *Dalmau* v. *Quiñones*, 78 D.P.R. 551 (1955) no consideran esta cuestión". (Escolio 6, pág. 115.)

La enmienda que entonces sugerimos fue adoptada en las reglas de 1979, al incorporar una referencia expresa a partes múltiples en la Regla 43.5 (antes 44.2). Hemos notado, sin embargo, que aunque la intención del Comité Consultivo fue adoptar íntegramente la enmienda experimentada por la Regla 54(b) federal en 1961, la versión quedó trunca al omitirse inexplicablemente parte del texto federal. Debemos atribuir, pues, el error a una cuestión puramente de forma en la traducción.

Ante esta situación se impone que en nuestra función rectora de interpretación subsanemos el error exponiendo la traducción completa de la regla lo cual resulta necesario para la apropiada disposición de este recurso siguiendo el enfoque hermenéutico expuesto en *Manrique de Lara* v. *El Registrador*, 23 D.P.R. 864 (1916).

El texto en itálicas es el texto que se omitió al hacer la traducción. En consecuencia la Regla 43.5 debe leer del modo siguiente:

Cuando un pleito comprenda más de una reclamación, ya sea mediante demanda, reconvención, demanda contra coparte o demanda contra tercero o figuren en él partes múltiples, el tribunal podrá dictar sentencia final en cuanto a una o más de las reclamaciones o partes sin disponer de la totalidad del pleito, siempre que concluya expresamente que no existe razón para posponer dictar sentencia sobre tales reclamaciones *o partes* hasta la resolución total del pleito, y siempre que ordene expresamente que se registre sentencia.

Cuando se haga la referida conclusión y orden expresa, la sentencia parcial dictada será final para todos los fines en cuanto a la controversia en ella adjudicada, y una vez sea registrada y se archive en autos copia de su notificación, comenzarán a correr en lo que a ella respecta los términos dispuestos en las Reglas 47, 48 y 53.

En ausencia de la referida conclusión y orden expresa, cualquier orden o cualquier otra forma de decisión, no

importa cómo se denomine, que adjudique menos del total de las reclamaciones *o los derechos y obligaciones de menos del total de las partes*, no terminará el pleito con respecto a ninguna de las reclamaciones *o partes* y la orden u otra forma de decisión estará sujeta a reconsideración por el tribunal que la dicte en cualquier momento antes de registrarse sentencia adjudicando todas las reclamaciones *y los derechos y obligaciones de todas las partes*.

Así leída su texto es claro. Para que una sentencia dictada en cuanto a una o más de las reclamaciones *o partes* comprendidas en un pleito pueda ser final, sin que se disponga de su totalidad, deberá expresamente contener una conclusión del tribunal de que "no existe razón para posponer [la . . .] hasta la resolución total del pleito".

Resuelto el extremo del texto de la Regla 43.5 y el alcance pretendido en la enmienda de 1979, procede entonces que consideremos el efecto procesal de una sentencia parcial que adjudique menos del total de las reclamaciones en casos de reclamaciones múltiples o los derechos y obligaciones de menos de la totalidad de las partes en casos que involucren partes múltiples, cuando, como en el presente caso, el juez sentenciador no hace la certificación de finalidad u ordena el registro de dicha sentencia. Este recurso nos permite por primera vez despejar la incógnita.

Admitimos que en la jurisdicción federal, donde nace y se desarrolla la regla, se ha decidido expresamente que en ausencia de la certificación no hay jurisdicción apelativa para examinar la sentencia. Sin embargo, es de notar que la Regla federal 54(b), equivalente a la nuestra, responde a un interés o política judicial, antecedentes(²) y esquema de procedimientos apelativos distintos. Nos explicamos.

_____

(²) Según explican Wright y Miller, en *Federal Practice and Procedure*, St. Paul, Minn., West Publishing Co., 1973, Vol. 10, sec. 2653, págs. 18–31, la trayectoria histórica de la Regla 54(b) federal comienza con el cuerpo de reglas aprobado en 1938. Originalmente se circunscribe a autorizar a los tribunales federales a disponer de una de varias reclamaciones en un pleito múltiple. Hasta ese momento la política federal de permitir una sola apelación en cada caso había impedido que este tipo de resolución fuese inmediatamente apelable. Al liberali-

El sistema federal propugna, como regla general, que solo haya una apelación en un caso, ante lo cual la política judicial establecida es que solo son revisables decisiones finales y no determinaciones interlocutorias. (3)

La regla federal se aplica a sentencias que son finales en sí mismas pero que se convierten en interlocutorias porque se producen en un caso de reclamaciones o partes

---

zarse la consolidación de reclamaciones en un solo pleito fue imperativa la regla de modo que, al resolverse una de varias reclamaciones, la sentencia pudiese y tuviese que apelarse en ese momento, y adviniese firme sin que las partes tuviesen que esperar a que se terminase todo el pleito.

Debido a la confusión que generó la determinación de cuándo una decisión caía o no bajo la regla y se convertía en final y apelable, en el año 1948 se enmendó la regla adicionándosele *el requisito de certificación*. Evidentemente, el propósito del requisito fue asegurar que quedara claro cuándo la apelación no procedía por ser prematura y cuándo el término fatal para apelar empezaría a correr a través del criterio objetivo de la ausencia o existencia de la certificación de finalidad.

Aún así, con la aprobación de esta enmienda surgieron dudas sobre la validez de la regla argumentándose que, al facultarse al tribunal de instancia a pasar juicio sobre cuándo una sentencia de este tipo debía considerarse final y apelable, se estaba permitiendo, por regla, expandir la jurisdicción apelativa de las cortes federales, en violación de la Regla 82 del propio cuerpo de reglas.

La cuestión fue resuelta en *Sears, Roebuck & Co.* v. *Mackey*, 351 U.S. 427 (1956), en que se decidió que para que proceda certificar como final una sentencia en este tipo de caso, la Regla requiere que la sentencia sea en efecto final dentro del significado de la Sec. 1291 del Título 28 del U.S.C. que es la que establece la jurisdicción apelativa de las cortes federales. Tienen que ser sentencias que dispongan totalmente de una reclamación separada dentro de un pleito de reclamaciones múltiples, o sea, sentencias que ordinariamente pondrían fin a un pleito si la reclamación que adjudican fuese la única, pero que se convierten en interlocutorias o parciales por el hecho de que dejan sin resolver otras reclamaciones incoadas dentro del mismo pleito. Por tanto, la regla lo que hace es permitir a los tribunales tomar estas decisiones que son interlocutorias o parciales respecto al pleito total, pero finales en sí mismas y reconocerles expresamente su carácter final para que se pueda proseguir el trámite apelativo respecto a ellas. En este sentido actúa el tribunal como un "despachador" que regula el volumen de estas sentencias que están listas para entrar al trámite apelativo. Véase *Curtiss-Wright Corp.* v. *General Electric Co.*, 446 U.S. 1 (1980).

En 1961 la Regla fue enmendada nuevamente, esta vez, para hacerla expresamente extensiva a la reclamación de o contra una parte en un caso con multiplicidad de partes pues había dudas sobre su aplicabilidad.

(3) Adviértase que en 28 U.S.C. sec. 1292(a) y (b) se establecen ciertas excepciones específicas y limitadas. Estas disposiciones son separadas y distintas de la Regla 54(b). La sec. 1292 aplica a determinaciones que son interlocutorias en sí mismas, independientemente de si surgen reclamaciones múltiples o individuales y como tal constituyen variaciones al requisito de finalidad.

múltiples y no resuelven todas las reclamaciones o adjudican los derechos u obligaciones de todas las partes. En estos casos se permite —con la certificación de finalidad— la apelación inmediata porque la política judicial contra varias apelaciones en un mismo caso no se afecta pues: (a) se trata de una reclamación separada de las demás; y (b) el posponer la finalidad y apelabilidad de la sentencia no se justifica.

En consecuencia si la decisión es interlocutoria en sí misma, aunque se dé en un pleito de reclamaciones o partes múltiples, la Regla 54(b) no aplica. Si es final en sí misma y aplica la Regla 54(b), pero no se hace la certificación, la decisión prevalece como interlocutoria y tampoco se puede apelar.

Esta práctica forense no es la situación procesal que rige en Puerto Rico. En nuestra jurisdicción no existe una política judicial contra la apelación de decisiones interlocutorias. Prueba de ello la encontramos en el fecundo desarrollo jurisprudencial del recurso apelativo de *certiorari* clásico. Como remedio extraordinario de ámbito abarcador y sin sujeción a tecnicismos procesales permite, en casos apropiados y meritorios, la intervención de un tribunal de superior jerarquía para conjurar los errores procesales cometidos.

■ Teniendo presente la existencia de este recurso somos de opinión de que la Regla 43.5 no tiene el efecto de impedir toda intervención del Tribunal Supremo con una sentencia parcial adjudicando la totalidad de una reclamación en particular en un pleito de reclamaciones múltiples o la totalidad de los derechos y obligaciones de una parte en un pleito de partes múltiples, cuando dicha sentencia no es final por no contener la certificación requerida. Sólo impide que se vea por apelación o revisión, mas no obsta que pueda examinarse mediante *certiorari* como cualquier otra resolución interlocutoria. La referida regla

no puede interpretarse de forma tal que limite la facultad que la ley otorga a este foro.

Recapitulando, la Regla 43.5 no impide el ejercicio de la facultad jurisdiccional discrecional apelativa. El efecto práctico de la interpretación de la regla que adoptamos en nuestra jurisdicción es permitir que el tribunal de instancia motu proprio o a petición de parte proceda, expresamente y en casos apropiados, a concluir que no existe razón para posponer dictar su sentencia, ordene certificar la finalidad de su dictamen parcial y con ello *obligue* a la parte perdidosa, si lo estima procedente, a iniciar los trámites posteriores apelativos contra la sentencia so pena de que ésta advenga firme. Con ello se evita dilatar y posponer la solución del pleito.

En consideración a la importancia de los planteamientos de las partes, en el caso de autos, fue que expedimos y consideramos el presente recurso como *certiorari* sin que existiera obstáculo jurisdiccional alguno. Ratificamos tal determinación.

## II

Superada la barrera jurisdiccional concentrémosnos en las interrogantes de carácter sustantivo que presenta el caso. ¿Está inmune de responsabilidad personal ordinaria por actuaciones negligentes o culposas un miembro de una sociedad civil profesional? ¿Qué efectos ello conlleva sobre la sociedad legal de gananciales a la cual pertenece?

A manera de prólogo preciso es reconocer que la sociedad profesional tiene profundas raíces en nuestra comunidad puertorriqueña. Es una institución de uso generalizado y aceptado que integra el esfuerzo común de muchos abogados, médicos, ingenieros, arquitectos y otros profesionales. Por sus particularidades representa la alternativa lícita disponible ante la prohibición del ejercicio de una profesión a través del ente corporativo. *Rasa Eng. Corp.* v. *Daubón*, 86 D.P.R. 193 (1962). Su existencia está reconocida en el Art. 1569 del Código Civil:

La sociedad particular tiene únicamente por objeto cosas determinadas, su uso, o sus frutos, o una empresa señalada, *o el ejercicio de una profesión o arte.* 31 L.P.R.A. sec. 4324. (Énfasis nuestro.)

La controversia presente en el caso ha sido tema de fascinante y constante discusión. Básicamente existen dos teorías en torno a la responsabilidad de los socios por las deudas y obligaciones de la sociedad a la cual pertenecen. La primera sostiene que a los socios les afecta una responsabilidad personal subsidiaria, ilimitada y no solidaria y, por ende, responden con el propio patrimonio pero, sólo después de haberse hecho excusión del fondo social. De resultar el fondo social insuficiente, son responsables personal e ilimitadamente en forma mancomunada. La otra teoría —que parte del supuesto de que ha surgido una persona jurídica distinta a los socios que la componen— establece que no puede existir responsabilidad personal subsidiaria de los socios ya que equivaldría a una fianza la cual no se presume. Puig Brutau, *Fundamentos de Derecho Civil*, 1956, T. II, Vol. II, pág. 427.

Esta diferencia en enfoque tiene sus orígenes en la naturaleza jurídica, conceptos atribuidos y evolución histórica de la sociedad. Véanse: Castán, *Derecho Civil Español, Común y Foral*, 1977, T. 4, págs. 568–569; J. Girón Tena, *Sobre los Conceptos de Sociedad en Nuestro Derecho*, 38 Rev. Der. Privado 369 (1954).

En nuestra jurisdicción en *J. T. Gibbons, Inc.* v. *Picó Piñán*, 90 D.P.R. 60, 66 (1964),[4] adoptamos la segunda teoría —rechazando responsabilidad personal subsidiaria de los socios en una sociedad civil— a base del siguiente razonamiento del comentarista español Puig Peña:

¿Qué ocurrirá cuando el patrimonio social no alcance a cubrir las deudas de la sociedad? ¿Responderán los socios

---

[4] Un extenso análisis crítico de la doctrina sentada en el caso de referencia, lo encontramos en Eugenio S. Belaval, *Gibbons v. Picó: ¿Jurisprudencia o Legislación?*, XXXVII Rev. Jur. U.P.R. 527 (1968).

con sus propios bienes? Es ésta hoy día una cuestión muy disputada. Como dice Castán, ha sido regla tradicional que se remonta como afirma Planiol, a los tiempos en que la sociedad no integraba una persona jurídica, la de que las deudas sociales gravan personalmente a los asociados. Este criterio tradicional ha informado la esencia propia del contrato de sociedad, pues, establecido éste para el reparto de ganancias y *pérdidas*, no cabe duda que de éstas debían responder los socios con sus propios bienes, a no ser que se estableciera el pacto de limitación de responsabilidad, puesto de manifiesto, como afirman Vavasseur y Ponsá Gil, al contratar con los terceros. Pero, constituida definitivamente en nuestro Derecho la sociedad como persona jurídica, es de más correcta técnica limitar la responsabilidad patrimonial de los socios a sus aportaciones. Efectivamente: según afirman Pérez González y Alguer, de las deudas de la sociedad (persona jurídica) sólo responde ésta con todos sus bienes presentes y futuros (art. 1911). La obligación subsidiaria de los socios sería responsabilidad por deuda ajena o fianza, y la fianza no se presume (art. 1827, n° 1°). *Tratado de Derecho Civil Español*, T. IV, Vol. II, pág. 390.

Una reflexión profunda nos mueve a distanciarnos de la posición anteriormente asumida. Amén de ser doctrina minoritaria claramente rechazada por Castán, [5] Manresa, [6] Scaevola, [7] Diego Espín [8] y Martínez Ruiz, [9] los razonamientos más convincentes le son adversos. Véase: P. J. De Azurza y Oscoz, *Problemas de la Sociedad Civil*, 5 Anuario de Derecho Civil 125–170 (1952). Los traductores [10] de Enneccerus, una vez los más fervientes favorecedores de la responsabilidad limitada —rigurosamente

---

[5] Castán, *Derecho Civil Español, Común y Foral*, 1977, T. 4, págs. 596–597.

[6] Manresa, *Comentarios al Código Civil Español*, 1972, T. 11, págs. 538–539.

[7] Scaevola, *Código Civil*, 1971, T. 25, Vol. 11, págs. 150–151.

[8] Diego Espín, *Manual de Derecho Civil Español*, 1975, Vol. 3, págs. 597–598.

[9] Martínez Ruiz, *Código Civil*, 1908, T. 10, págs. 141–142.

[10] Nos referimos a Blas Pérez González y José Alguer, en quienes se basa Puig Peña —y por ende, *J. T. Gibbons, Inc.*, supra— para adoptar la teoría de la limitación de la responsabilidad personal de los socios posteriormente descartada.

lógica partiendo de la premisa de la personalidad distinta—
al apartarse de la misma ofrecen los siguientes argumentos persuasivos:

El hecho de que en los arts. 1.689 ss. [equivalente al Art. 1580 del Código Civil nuestro, 31 L.P.R.A. sec. 4351] se regule la distribución no sólo de ganancias sino también de pérdidas y la misma regla del art. 1.698 ap. 1 (exclusión de la responsabilidad solidaria de los socios), [equivalente al Art. 1589 del Código Civil nuestro, 31 L.P.R.A. sec. 4372] suministran una base suficiente para afirmar que los socios responden subsidiariamente (y mancomunadamente), con su patrimonio personal, de las deudas de la sociedad que el patrimonio social no alcance a cubrir. Ciertamente, la personalidad jurídica de la sociedad ha de traducirse en la sujeción del patrimonio social al cumplimiento de las obligaciones de aquélla, de conformidad con la regla general del art. 1.911; [equivalente al Art. 1811 del Código Civil nuestro, 31 L.P.R.A. sec. 5171] pero una cosa es afirmar que responde la sociedad (persona distinta de los socios, dotada de un patrimonio diferenciado del privativo de cada uno de éstos) *y otra cosa es estimar que solamente responda ella. Para que sucediera esto último, sería menester que se hubiera arbitrado un sistema de protección y garantía de los terceros que contraten con la sociedad, sistema completamente ausente de la regulación del contrato de sociedad en el C. c.* Por eso estima, en general, nuestra doctrina que sólo si al constituir la sociedad se ha convenido la limitación de la responsabilidad al patrimonio social y *sólo si los terceros conocen esta circunstancia,* podrá excluirse la responsabilidad subsidiaria de los socios (con su propio patrimonio). Piénsese, además, que, al menos en teoría, cabe la posibilidad de una sociedad constituida sólo con aportaciones de industria (cf. art. 1.665: dinero, bienes o industria) *o que solamente tenga por objeto el ejercicio de una profesión o arte* [equivalente al Art. 1556 del Código Civil nuestro, 31 L.P.R.A. sec. 4311] (cf. art. 1.678), [equivalente al Art. 1569 del Código Civil nuestro, 31 L.P.R.A. sec. 4324] *sin que propiamente se constituya un patrimonio social o sin que éste tenga entidad suficiente para responder de las obligaciones que eventualmente contraiga la sociedad.*

Según la opinión expresada en anteriores ediciones de estas notas, lo más exacto es que por pérdida sólo ha de entenderse la disminución o desaparición total de lo aportado y, en su caso, de lo ganado, pero no las deudas excedentes del activo. Con base en esta consideración y en el carácter de persona jurídica distinta de los socios, se argumentaba allí decididamente en favor de la exclusión de la responsabilidad personal subsidiaria de los socios. *Pero no dejaba de advertirse que ésta no es quizá la solución más justa.* Creemos, efectivamente, que no lo sería y que, consecuentemente, forzoso es adherirse a la interpretación que sin violentar los textos legales permita el hallazgo de *una solución justa y lógica.* Y no parece que haya violencia en admitir que las pérdidas a que aluden los arts. 1.689 ss. pueden abarcar el pasivo social, y que el art. 1.698 ap. 1 no excluye la responsabilidad de los socios *sino que se limita a declarar que no quedan obligados solidariamente (lo que equivale a afirmar que quedan obligados mancomunadamente, en caso de insuficiencia del patrimonio social). Tratado de Derecho Civil,* Enneccerus-Kipp-Wolff, 1966, T. II, Vol. 2, pág. 729. (Énfasis nuestro.)

Ciertamente el debate en cuanto a la responsabilidad de los socios tiene su génesis en la rigurosidad que se le quiere imprimir al concepto de personalidad jurídica, al confrontarla con los antecedentes históricos de la sociedad y frente al efecto práctico de la ausencia de garantías patrimoniales para con los terceros y, por ende, la estabilidad del comercio. La solución exige una mayor flexibilidad en cuanto a este concepto de personalidad. Nos ilustra Manresa:

El contrato de sociedad válidamente celebrado produce, como primer efecto, la creación de una entidad jurídica distinta e independiente de la de cada uno de los socios, que puede ser activa y pasivamente sujeto de derecho, pero el nacimiento de esa entidad no extingue la personalidad de los socios ni los vínculos jurídicos que traen su origen de las relaciones contractuales de los mismos, ya con la propia sociedad formada por ellos, ya con terceras personas extrañas a ella. *Código Civil Español,* 1972, T. 11, pág. 442.

Bajo un enfoque integral esta decisión es la que más armoniza con el estado de derecho vigente. Resulta irreconciliable que mientras de un lado esté vedado a los profesionales hacer uso de la ficción corporativa —institución que ofrece salvaguardas al interés general por los detalles y regulaciones contenidas en la Ley General de Corporaciones (11) y la fiscalización del Estado— éstos puedan por otro medio obtener iguales beneficios, privilegios o ventajas haciendo uso de la sociedad civil. Para auspiciar esa solución sería indispensable crear y administrar un sistema de protección, publicidad y garantías de terceros, completamente ausente en la reglamentación vigente del contrato de sociedad en nuestro Código Civil.

No podemos perder de vista que la sociedad es un contrato por el cual dos o más personas se obligan a poner en común, dinero, bienes o industria, con ánimo de partir entre sí las ganancias. Art. 1556 (31 L.P.R.A. sec. 4311). De un examen de los artículos del Código Civil pertinentes, relacionados con esta institución, advertimos que éstos se refieren únicamente a los efectos jurídicos del contrato en sus diversas manifestaciones que, en contraste con las corporaciones y las sociedades mercantiles, no pretenden regular la sociedad como una entidad o persona jurídica ajena y totalmente desvinculada de sus miembros. Manresa nos dice:

> Las sociedades civiles, dicen, aunque constituyan una entidad con vida propia, no tienen una personalidad independiente de los socios que la forman, si bien es distinta de la de éstos la suya; y por eso el tercero no obliga a la sociedad, sino al socio o socios con quienes particularmente hubiere contratado, sin perjuicio de que los socios contratantes, en nombre y en interés de la misma, repitan contra los demás en la proporción establecida. Por eso, porque la sociedad no contrae *directamente* ninguna relación jurídica con los terceros, no habla el Código de las obligaciones de la sociedad para con éstos, sino tan sólo de las que contraen los

(11) Ley Núm. 3 de 9 de enero de 1956 (14 L.P.R.A. sec. 1101 *et seq.*).

socios que en interés de ella contratan con los mismos. *Op. cit.*, pág. 533.

 En atención a lo expuesto, a la continuidad y dinámica de las vertientes doctrinales españolas —fuente principal de nuestro ordenamiento civil— a la mejor armonía en los preceptos de nuestro Código Civil, y en consideración a las circunstancias socio-económicas imperantes, revocamos hoy la tesis acogida en *J. T. Gibbons, Inc.*, supra. Adoptamos la norma generalmente admitida en la doctrina civil: los socios en una sociedad civil profesional responden con su patrimonio personal, subsidiaria y mancomunadamente, de las obligaciones de la sociedad en caso de que el patrimonio social no baste para cubrirlos.

## III

 Teniendo presente los anteriores principios concluimos que la sociedad legal de gananciales Gutiérrez-Brunet potencialmente puede ser responsable por los actos culposos o negligentes realizados por uno de sus integrantes, en este caso, el Ingeniero Ariel Gutiérrez, durante sus gestiones profesionales como miembro de la *Sociedad E.H.G. Arquitectos e Ingenieros*. "[C]uando la multa o condena es motivada por la comisión de un delito, como regla general —pues hay excepciones . . .— la responsabilidad es personal del cónyuge que lo cometió; *pero en casos de responsabilidad civil extracontractual, la responsabilidad será* personal o *de la sociedad de gananciales según los hechos que la produjeron. . . .*" (Énfasis nuestro.) *Lugo Montalvo* v. *González Mañón*, 104 D.P.R. 372,- 378 (1975); seguido en *Albaladejo* v. *Vilella Suau*, 106 D.P.R. 331, 338 (1977). La regla, generalmente reconocida, es que si la gestión del integrante aprovecha económicamente a la masa ganancial, la responsabilidad también será a cargo de dichos bienes. En este sentido no es convincente el planteamiento de los recurridos de que al no percibir *directamente* el ingreso del Ingeniero Ariel Gutiérrez la sociedad

de gananciales y sí otra entidad jurídica —la *Sociedad E.H.G. Arquitectos e Ingenieros*— ello exime de tal responsabilidad. La base del argumento —que la sociedad ganancial no se beneficiaba directamente de las gestiones realizadas por el Ingeniero Ariel Gutiérrez— es errónea. En una sociedad civil los verdaderos recipientes de ingresos son los socios que la componen, en este caso Gutiérrez.

A la luz de la doctrina y jurisprudencia erró la sala de instancia. Mientras correctamente declaró sin lugar la moción de sentencia sumaria presentada por el Ingeniero Ariel Gutiérrez por el fundamento de que "la determinación de la responsabilidad, si alguna, del codemandado, ... debe determinarse en un juicio plenario", cometió error al desestimar la acción contra la sociedad legal de gananciales, cuando la responsabilidad de ésta va a depender del resultado y circunstancias de la primera determinación.

▆▆ Recapitulando. La personalidad jurídica que nace mediante el contrato de sociedad no es de total independencia de la personalidad de los socios que la forman. La existencia de una sociedad civil de jure, no exime de responsabilidad a sus socios en su capacidad individual. Responden con su patrimonio personal, subsidiaria y mancomunadamente, de las obligaciones de la sociedad en caso de que el patrimonio social no sea suficiente. La responsabilidad de éstos deberá determinarse en un juicio plenario. Hecha tal determinación procede la aplicación de la doctrina expuesta en el caso *Lugo Montalvo* v. *González Mañón*, supra, para solucionar el grado de responsabilidad de una sociedad legal de gananciales en casos apropiados.

*Se dictará sentencia que revoque la Resolución del 19 de junio de 1980 y se devolverá el caso para trámites ulteriores compatibles con lo expuesto.*

El Juez Presidente Señor Trías Monge y los Jueces Asociados Señores Dávila y Torres Rigual no intervinieron.