Sanchez Martínez, Juez Ponente
*1103 TEXTO COMPLETO DE LA SENTENCIA
La controversia en este caso es si un tribunal puede anular sua sponte una sentencia, doce años después de ésta ser final, firme e inapelable, por haber devenido el tribunal en conocimiento de que la sentencia original fue dictada contra un hombre casado, a base de una obligación ganancial, sin que la esposa ni la sociedad legal de ganancialezs compuesta por ambos, hubiesen sido incluidas como partes ni notificadas del pleito de modo alguno, y sin haberse demostrado que tal sentencia fue obtenida por fraude a las partes o al tribunal. Resolvemos que no.
- El 25 de junio de 1982, Porfirio Velázquez Díaz, su esposa Aida Estrella y la sociedad legal de gananciales compuesta por ambos ("los demandantes") presentaron una acción de daños por incumplimiento de contrato contra José Betancourt Cortijo y Juan Betancourt Cortijo. Contra Juan se dictó sentencia parcial en rebeldía el 8 de agosto de 1983. Contra José se dictó sentencia en los méritos el 19 de septiembre de 1983. Las sentencias condenaron a los demandados a pagarle solidariamente a los demandantes $22,000. Ambas sentencias devinieron firmes por no haberse instado recurso alguno contra éstas. El 24 de noviembre de 1987, el entonces Tribunal Superior, Sala de Bayamón, expidió, a solicitud de los demandantes, una orden dirigida al Registrador de la Propiedad para anotar un embargo sobre una propiedad inscrita a nombre del co-demandado Juan Betancourt Cortijo ubicada en la urbanización Parque Ecuestre de Carolina.
Así las cosas, diez años después de ser firmes las sentencias dictadas, los demandantes solicitaron su ejecución mediante la venta en pública subasta de la residencia embargada. El alguacil de la Sala de Carolina expidió el edicto de la subasta que se celebraría el 28 de febrero de 1994. Copia del edicto fue remitido a la dirección de la propiedad a subastarse.
El 18 de febrero de 1994, diez días antes de la fecha señalada para la subasta, la señora Aurea Lila Rosado Ortiz presentó una moción de intervención por sí y en representación de la sociedad legal de gananciales que tenía constituida con el co-demandado Juan Betancourt Cortijo. En dicha moción jurada solicitó la paralización de la subasta aduciendo que ella nunca había sido incluida como parte en esta acción ni se le había concedido, de modo alguno, una oportunidad de ser escuchada. Sostuvo que permitir la venta del inmueble perteneciente a la sociedad legal de gananciales de la cual era parte, constituiría un despojo irremediable de sus derechos en la propiedad.
El 23 de febrero de 1994, el Tribunal de Primera Instancia, Sala Superior de Bayamón, denegó la moción porque de ésta sólo surgía que ella estaba casada con el co-demandado Juan Betancourt Cortijo para la fecha en que éste fue demandado y emplazado pero que no surgía que ella tuviese participación alguna en dicha propiedad. Basó su razonamiento en que la interventora Rosado Ortiz no compareció junto a su esposo al otorgamiento de la escritura de compraventa (aun cuando la escritura hacía constar que ellos estaban casados entre sí) y no podía inferirse que por el sólo hecho de ellos estar casados existía una sociedad legal de gananciales ni que dicha propiedad fuera parte de tal sociedad. Sin embargo, como la anterior resolución no había sido notificada para la fecha de la subasta, (28 de febrero), el alguacil optó por suspenderla en lo que se conocía la resolución. De hecho, fue el 9 de marzo de 1994 que se archivó en autos copia de su notificación.
Un año y un día después, el 10 de marzo de 1995, la interventora Rosado Ortiz pidió reconsideración del anterior dictamen a base de la presunción de ganancialidad para los bienes adquiridos por personas casadas entre sí establecida en el Art. 1307 del Código Civil, 31 L.P.R.A. see. 3647. El 29 de marzo de 1995 el tribunal a quo acogió la moción de reconsideración y ordenó la paralización de la subasta "en cuanto a la participación de la Sra. Aurea Lila Rosado Ortiz por no haber sido ésta parte del pleito de autos". Copia de esta notificación fue archivada en los autos del caso el 5 de abril de 1995.
Seis meses después, el 3 de octubre de 1995, los demandantes presentaron una moción en la cual adujeron que no habían podido ejecutar la sentencia obtenida contra el co-demandado Juan Betancourt Cortijo sobre el inmueble de referencia porque la esposa de éste no fue incluida como parte en el pleito ya que fue en la etapa de ejecución de la sentencia que se enteraron que ellos tenían constituida una sociedad legal de gananciales. Por tal razón, pidieron del tribunal a quo que ordenara la expedición de un emplazamiento a nombre de la señora Rosado Ortiz. El 25 de octubre de 1995 el *1104 tribunal de primera instancia denegó de plano esta moción mediante resolución, cuya copia de la notificación fue archivada en los autos del caso el 8 de noviembre de 1995.
El 27 de noviembre de 1995 los demandantes presentaron una moción de reconsideración que fue respondida con la emisión de una nueva "sentencia" de 5 de julio de 1996, que es el dictamen objeto del presente recurso. En la nueva "sentencia" el tribunal de primera instancia declaró la nulidad de las dos sentencias dictadas trece años antes, el 8 de agosto y el 19 de septiembre de 1983. El tribunal a quo concluyó que la esposa del co-demandado Juan Betancourt Cortijo y la sociedad legal de gananciales compuesta por ellos eran partes indispensables en la acción de cobro de dinero porque las sentencias dictadas en 1983 afectaron el patrimonio ganancial de los cónyuges. De esta "sentencia" es que apelan los demandantes.
Los apelantes señalan únicamente que el Tribunal de Primera Instancia incidió en error al dejar sin efecto una sentencia final, firme y ejecutoria. Por su parte, la señora Rosado Ortiz ha presentado un alegato en el cual se opone al recurso a base de que la nueva "sentencia" es correcta en derecho porque la omisión de acumularla a ella y a la sociedad legal de gananciales constituyó un defecto fatal de parte indispensable que hizo nula la sentencia de 1983.
Antes de considerar los méritos del recurso es necesario aclarar que el recurso procedente en el caso de autos no es la apelación sino el certiorari y, como tal, lo acogemos. Art. 4.002 de la Ley de la Judicatura de 1994, Ley de 28 de julio de 1994, 4 L.P.R.A. sec. 22k (párr. que sigue al inciso i) (Supl. 1996). Nos explicamos. Como regla general, todo dictamen decretando el relevo de una sentencia se considera una resolución, no una sentencia final y, por ende, revisable únicamente por certiorari. Art. 4.002 de la Ley de la Judicatura de 1994, supra, inciso f. Véase, además, Pérez Rodríguez v. Tribunal Superior, 99 D.P.R. 977 (1971). 
La Regla 49.2 de Procedimiento Civil, supra, dispone en su parte pertinente lo siguiente:

"Mediante moción y bajo aquellas condiciones que sean justas, el tribunal podrá relevar a una parte o a su representante legal de una sentencia, orden o procedimiento por las siguientes razones:

"(1)

(2)

(3)

(4) Nulidad de la sentencia

(5)....

(6)....

"... La moción se presentará dentro de un término razonable, pero en ningún caso después de transcurridos seis (6) meses de haberse registrado la sentencia u orden o haberse llevado a cabo el procedimiento. Una moción bajo esta Regla 49.2 no afectará la finalidad de una sentencia, ni suspenderá sus efectos. Esta regla no limita el poder del tribunal para (a) conocer de un pleito independiente con el propósito de relevar a una parte de una sentencia, orden o procedimiento; (b) conceder un remedio a una parte que en realidad no hubiere sido emplazada; y (c) dejar sin efecto una sentencia por motivo de fraude al tribunal....".
De lo anterior se desprende que la Regla 49.2 provee un mecanismo para que una parte pueda solicitar el relevo de una sentencia en su contra, siempre que se cumpla con una de las causales allí enumeradas y se presente la misma dentro de un término razonable que no podrá exceder de seis meses de haberse archivado en autos copia de la notificación de la sentencia. El Tribunal Supremo ha resuelto que este término es de naturaleza fatal en su acción extintiva del derecho; Sánchez Ramos v. Troche Toro, 111 D.P.R. 155 (1981); Mun. Coamo v. Tribunal Superior, 99 D.P.R. 932, 937 (1971) y que transcurrido dicho plazo, no puede adjudicarse la solicitud de relevo. Banco Santander v. Fajardo *1105 Farms Corp., _ D.P.R. _ (1996), 96 J.T.S. 100, a la pág. 1355.
Si un tribunal de primera instancia no tiene jurisdicción para anular una sentencia a base de una moción de relevo de sentencia presentada fuera del plazo fatal de seis meses, menos facultad tiene para hacerlo sin que se le haya solicitado el relevo de la sentencia. De cuanto hemos relatado se desprende que la interventora Rosado Ortiz solamente compareció a solicitar la paralización de la subasta que amenazaba con rematar al mejor postor la residencia en que tiene constituido su hogar con el co-demandado Juan Betancourt Cortijo, por nunca antes haber sido hecha parte en la acción ni haber tenido noticia de que a él lo hubiesen demandado. Ella no solicitó que se dejara sin efecto la sentencia dictada diez años antes contra su marido; ella simplemente aducía que la misma no podía cobrarse ejecutando bienes pertenecientes a la sociedad legal de gananciales que ellos tenían constituida pues hacerlo sería contrario al debido proceso de ley.
La apelada obtuvo el remedio que solicitaba mediante la resolución de 29 de marzo de 1995 que ordenó la paralización de la subasta "en cuanto a la participación de la Sra. Aurea Lila Rosado Ortiz por no haber sido ésta parte del pleito de autos". Nadie recurrió de ese dictamen. Lo próximo que ocurrió es que la parte demandante solicitó que se expidiera un nuevo emplazamiento contra la señora Rosado Ortiz, moción que fue denegada el 25 de octubre de 1995. Pero ante la moción de reconsideración respecto a este dictamen, lo único que podía hacer el tribunal a quo era concederla o denegarla; no mover lo innamovible.
La única jurisdicción que tenía el tribunal de primera instancia en esa ocasión —la cual aún conserva— era y es para resolver las controversias que pudiesen surgir en torno al procedimiento de ejecución de la sentencia, no a relitigar las reclamaciones ya adjudicadas en este caso. En Cruz Viera v. Registrador, 118 D.P.R. 911 (1987), el Tribunal Supremo, a base de lo dispuesto en el Art. 1310 del Código Civil de Puerto Rico, 31 L.P.R.A. see. 3663, resolvió que cuando el cónyuge demandado no tenga bienes con los cuales responder o cuando éstos sean insuficientes, se podrá repetir contra los bienes de la sociedad de gananciales siempre que se alegue y se pruebe que la sociedad de gananciales posee bienes para sufragar las cargas y obligaciones dispuestas en el Art. 1308 del Código Civil, 31 L.P.R.A. see. 3661. En tal caso, se tiene que incluir al cónyuge inocente en la moción para ejecución de sentencia, citársele o emplazársele para proteger su derecho a ser oído antes de determinarse si procede el embargo de los bienes de la sociedad de gananciales. Id., a la pág. 916.
Entre las facultades que tiene el tribunal a quo está expedir las correspondientes órdenes y mandamientos dirigidos al Registrador de la Propiedad para proteger los derechos regístrales del titular que no fue parte en la acción que dió origen a la anotación de embargo. Pero nada puede hacer respecto a los derechos ya adjudicados por sentencia entre los demandantes y los señores Juan y José Betancourt Cortijo. El hecho de que los demandantes no puedan ejecutar la sentencia obtenida en 1983 vendiendo en pública subasta el inmueble ganancial de los esposos Betancourt-Rosado, no impide que los demandantes la ejecuten en los bienes privativos del co-demandado Juan Betancourt Cortijo, si es que tuviere alguno. Es sólo después del trámite de excusión de bienes a que se refiere Cruz Viera v. Registrador, que puede iniciarse el procedimiento de ejecución contra los bienes gananciales.
Con estos antecedentes, se expide el auto de certiorari solicitado y se revoca la resolución recurrida. Se ordena la continuación de los procedimientos de forma compatible con lo aquí dispuesto, en particular con la expedición del emplazamiento o citación dirigida a la interventora, señora Aurea Lila Rosado Ortiz.
Lo acordó el Tribunal y lo certifica la señora Secretaria General.
Aida Ileana Oquendo Graulau
Secretaria General
ESCOLIOS 97DTA65
1. Realmente se trataba de una resolución interlocutoria pues el tribunal sentenciador no hizo la certificación de finalidad que requiere la Regla 43.5 de Procedimiento Civil, 32 L.P.R.A. Ap. III. Asociación de Propietarios v. *1106 Santa Bárbara Co., 112 D.P.R. 33 (1982).
2. También es necesario consignar que si la Regla 47 de Procedimiento Civil, 32 L.P.R.A. Ap. Ill, R. 47, fuese aplicable a las resoluciones interlocutorias, entonces la moción de reconsideración de los demandantes habría sido presentada fuera del plazo de quince días provisto en dicha regla. La copia de la notificación de la resolución respecto de la cual se solicitó reconsideración fue archivada en autos el 8 de noviembre de 1995. El plazo de quince días expiró el jueves 23 y la moción de reconsideración fue presentada el lunes 27, es decir, fuera de dicho plazo. Sin embargo, en vista de que no se ha resuelto autoritativamente esta cuestión y el Tribunal Supremo parece no haber aplicado la Regla 47 a las resoluciones interlocutorias, e.g., Torres Cruz v. Municipio de San Juan, 103 D.P.R. 217 (1975); Cortés Román v. E.L.A., 106 D.P.R. 504 (1977); y la Regla 43.5 de Procedimiento Civil, supra, habremos de considerar los méritos del recurso.
3. Por ésta y otras razones que no es menester discutir aquí es que no es aplicable a los hechos de este caso la normativa de excepción admitida por el Tribunal Supremo en Banco Santander v. Fajardo Farms Corp., supra.
4.El Art. 1310 dispone lo siguiente:

"El pago de las deudas contraídas por el marido o la mujer antes del matrimonio no estará a cargo de la sociedad de gananciales.

Tampoco lo estará el de las multas y condenas pecuniarias que se les impusieren.

Sin embargo, el pago de las deudas contraídas por el marido o la mujer con anterioridad al matrimonio, y el de las multas y condenas que se le impongan, podrá repetirse contra los gananciales después de cubiertas las atenciones que enumera la see. 3661, si el cónyuge deudor no tuviese capital propio o fuera insuficiente; pero al tiempo de liquidarse la sociedad se le cargará lo satisfecho por los conceptos expresados."

5.Como, por ejemplo, ordenar al Registrador de la Propiedad la cancelación de la anotación del embargo decretado en 1987 por ser nulo dicho embargo. Véase S.L.G. v. Pauneto Rivera, _ D.P.R. _ (1992), 92 J.T.S. 78.