# 98 DTA 175

**TRIBUNAL DE CIRCUITO DE APELACIONES**
**CIRCUITO REGIONAL VII - CAROLINA Y FAJARDO**

CESAR FLORES Y OTROS
Demandante

v.

DR. ENRIQUE ARIEL VERA, IVETTE VERA Y LA SOCIEDAD LEGAL DE GANANCIALES
COMPUESTA POR AMBOS
Demandados-Apelantes

---------------------------------------------------------------

NELLY MALARET Y OTROS
Demandados

v.

AMERICAN INTERNATIONAL INSURANCE COMPANY Y NATIONAL INSURANCE CO.
Terceras Demandadas y Apelada la Ultima

Núm. KLAN-98-00062

San Juan, Puerto Rico, a 23 de abril de 1998

Panel integrado por su Presidente, Juez Arbona Lago
y los Jueces Negroni Cintrón y Salas Soler

Salas Soler, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

Enrique Ariel Vera y otros (en adelante, Ariel Vera) solicitan la revisión de una sentencia parcial dictada el 18 de junio de 1997, notificada el 21 de noviembre de 1997, mediante la cual se desestimó la acción de los apelantes en contra de una de sus aseguradoras.

### I

El 1ro. de diciembre de 1997 la parte apelante solicitó se reconsiderara la decisión y que se hicieran determinaciones de hechos adicionales. El 3 de diciembre de 1997, notificada el 10 de diciembre, el Tribunal de Instancia emitió Sentencia Sumaria Parcial Enmendada *"Nunc Pro Tunc "* a los fines de incluir la terminología exigida por la Regla 43.5 de Procedimiento Civil, 32 L.P.R.A. Ap. III, convirtiéndola así de una mera resolución en una sentencia parcial. *Asociación de Propietarios v. Santa Bárbara Co.*, 112 D.P.R. 33 (1982).

Al añadirse el elemento de finalidad no puede considerarse a la sentencia enmendada *"nunc pro tunc"* como tal, puesto que este tipo de enmienda no sería retroactiva a la fecha de la primera *"sentencia sumaria parcial"*. Al momento en que la parte solicitó las determinaciones de hechos adicionales, no se había interrumpido término para recurrir en alzada, pues sólo se trataba de una resolución. Ahora bien, una vez se convierte en sentencia el dictamen, tomó vigencia la moción de reconsideración y en solicitud de determinaciones de hechos adicionales ya obrante en autos y el efecto de interrumpir el término para recurrir en alzada. Regla 50 de Procedimiento Civil, 32 L.P.R.A. Ap. III. El tribunal declaró no ha lugar la moción de reconsideración el 23 de diciembre de 1997, notificada el 29 de diciembre. Nada resolvió en cuanto a la moción solicitando determinaciones de hechos adicionales. Entendemos que al momento en que la parte acude ante nos en apelación es sinónimo de que desistió de su solicitud de determinaciones de hechos adicionales al amparo de la Regla 43.3 de Procedimiento Civil, 32 L.P.R.A. Ap. III, porque ambos trámites son incompatibles. Por lo tanto, tenemos jurisdicción y pasaremos a atender el asunto.

### II

Conforme a los documentos ante nos el caso de epígrafe trata de una demanda de daños y perjuicios presentada por César Flores y su esposa, Millie Nieves (Flores Nieves) contra el ginecólogo Enrique Ariel Vera y su esposa Ivette Vera (Vera Vera), propietarios ambos del apartamento 609-A del Condominio Playa Dorada y contra otras personas que actuaron como corredores de bienes raíces en la obtención del alquiler del mencionado apartamento. De acuerdo a las alegaciones que surgen de la demanda presentada en agosto de 1995 el matrimonio Flores Nieves pidió a una agente de bienes raíces que les consiguiera un apartamento de dos habitaciones, ya que se deseaban mudar a una casa más grande debido a que la señora Nieves tendría un bebé en octubre de ese año. Se mudaron entonces al apartamento 611-B del Condominio Playa Dorada. Aparentemente la agente corredora y los dueños del apartamento 611-B confrontaron problemas, puesto que los dueños del apartamento ya lo habían alquilado a otras personas. Ante dicha situación la agente les gestionó otro apartamento en el edificio A del mismo complejo de condominios, el 609-A, por una renta mensual de $750.00. El matrimonio Flores Nieves se mudó a ese apartamento a fines de agosto.

El 5 de septiembre y en vísperas del paso del huracán Luis, se personó al apartamento en horas de la noche el Dr. Vera quien lo abrió con sus propias llaves puesto que desconocía que los demandantes ya se habían mudado. Le entregó entonces a los demandantes la tarjeta de estacionamiento y rollos de cinta adhesiva a los inquilinos en la eventualidad de que llegara el huracán. Esa misma noche llamó la esposa del doctor y alegadamente les indicó a los demandantes que si la agente le había alquilado el apartamento lo tenían que desocupar inmediatamente, pues ella los había engañado en una ocasión y que no lo alquilaban por menos de $1,200.00. El demandante solicitó se les permitiera quedarse por un mes debido a problemas que habían enfrentado anteriormente y a que su esposa se encontraba en el octavo mes de embarazo a lo que los esposos Vera Vera se negaron. Al otro día la señora Ivette Vera y su esposo se personaron al apartamento y lo abrieron con sus propias llaves, cambiaron las cerraduras y les indicaron a los demandantes que debían salir del mismo inmediatamente, esto aún cuando ese mismo día era que se esperaba que pasara el huracán Luis. El matrimonio Vera Vera no contaba con orden de desalojo o desahucio. Los demandantes solicitaron que al menos les dejaran sus

muebles allí debido a que las condición del clima les dificultaba mudarse ese mismo día, a lo que estos se negaron. La policía se personó al apartamento e indicaron al matrimonio Vera Vera que ese desahucio era ilegal, pero éstos hicieron caso omiso de ésto.

Los demandantes tuvieron que mudarse **apresuradamente,** dañándose parte de su propiedad debido a la lluvia y a que tuvieron que hacer la mudanza por las escaleras debido a que los ascensores habían dejado de funcionar. Los demandantes se vieron obligados a pernoctar por casi un mes en casa de un familiar durmiendo sobre una colchoneta en el piso. Alegadamente debido a la tensa situación a la que se tuvo que enfrentar, la señora Nieves comenzó a confrontar problemas con su embarazo que hasta el momento se había desarrollado perfectamente, ocasionando que se le tuviera que practicar una cesárea de emergencia el 18 de septiembre de 1995, un mes antes de la fecha señalada y sin contar con un lugar estable para vivir.

Así las cosas el matrimonio Flores Nieves decidió incoar la demanda que da lugar a esta causa. El matrimonio Vera Vera procedió a incoar demanda contra coparte y demanda contra tercero contra sus aseguradoras American International Insurance Co. (American) y National Insurance Co. (National), alegando que este incidente estaba cubierto por su póliza de seguro por lo que ellas tenían el deber de cubierta y defensa de su asegurado. El 22 de abril de 1996 los recurrentes solicitaron se dictara sentencia sumaria a su favor y, por ende, se dispusiera que ambas aseguradoras estaban obligadas a defender a los asegurados bajo sus pólizas, a proveerles cubierta para lo que se reclama en la demanda y a reembolsarle los gastos incurridos por sus asegurados en la defensa del presente caso. La solicitud de sentencia sumaria recopila básicamente las alegaciones según surgen de la demanda, y en copia de las pólizas de seguros. Los apelantes apoyaron su solicitud en que los hechos según relatados en la demanda son constitutivos de una *"ocurrencia" y que los daños, o al menos parte de ellos, no fueron "esperados o deseados por ellos".* National se opuso en término a dicha solicitud alegando que la Póliza Número NPP003813 con vigencia del 13 de enero de 1993 al 13 de enero de 1996, es una Póliza de Seguros de Propietarios de Residencia (Homeowner's Policy) que no cubre daños personales *("Personal Injury")* ni acciones culposas intencionales *("torts")* tales como el desahucio y la entrada ilegal. Posteriormente National presentó moción solicitando se dictara sentencia sumaria a su favor y se determinara que la póliza no cubría las actuaciones de los apelantes pues la misma estaba limitada a *"ocurrencias",* o sea, a accidentes, a la manifestación concreta del riesgo asegurado.

Tras varios trámites procesales el Tribunal de Instancia dictó sentencia sumaria parcial desestimando la reclamación en contra de la aseguradora National al entender que el incidente no estaba cubierto por la póliza. El Tribunal de Instancia determinó que la póliza lo que cubría era accidentes ocurridos en la propiedad que no fueran causados intencionalmente por el asegurado y que no cubría daños personales en las que se aseguran acciones torticeras intencionales tales como el desahucio y la entrada ilegal. El Tribunal concluyó que las alegaciones de la demanda no colocan el daño dentro de la póliza, ya que se trata de actos intencionales y no de un accidente, por lo que la aseguradora no tiene el deber de proveerle representación legal, ni de indemnizarlo.

Inconformes con dicha determinación el matrimonio Vera Vera apela ante este circuito señalando la comisión de error en cuanto a la interpretación del contrato de seguro y en la adjudicación del derecho. Argumentan que el tribunal *a quo* erró al adjudicar credibilidad a las alegaciones de la demanda y tomarlas como ciertas aun cuando las mismas no fueron probadas. Indican además que la póliza obliga a la aseguradora a proveer defensa a su asegurado aun cuando la causa de acción formulada en contra de éste no tuviere fundamento o fuere falsa o fraudulenta y que se debía proveer defensa pues las consecuencias, si algunas, aunque fueron producto de acciones intencionales no eran deseadas.

National presentó su alegato en oposición el 3 de marzo de 1998 en el que discuten la corrección de la determinación apelada. Discute que los únicos hechos que el tribunal debe tomar en consideración al momento de determinar la procedencia de una sentencia sumaria son los que bien se alegan en la demanda y la propia cubierta de seguro y que en este caso lo que ambos apuntan es que no se trata de un accidente, sino de una acción intencional y que la póliza lo que acumula es una serie de cubiertas, entre ellas seguros de propiedad y de responsabilidad civil, que lo que cubre es *"ocurrencias".* Esto es accidentes, excluyendo expresamente daños corporales o a la propiedad que son esperados o deseados por el asegurado y los daños personales *("personal injury")* que serían los

que contendrían las acciones intencionales que aquí se reclaman. Argumenta que las alegaciones de la demanda claramente excluyen de la cubierta de la póliza los daños reclamados, por lo que no se le puede obligar a proveer defensa. El apelado indica que contrario a lo argumentado en su apelación fueron los propios apelantes quienes utilizaron los hechos según aducidos en la demanda para que declararan con lugar su solicitud de sentencia sumaria y que luego al ser utilizados por ellos para su respectiva sentencia sumaria es que indican que existe controversia sobre ellos; sin embargo, no radicaron ningún documento o alegación que efectivamente pusiera los hechos en controversia con respecto a las sentencias sumarias radicadas. Indican que el Tribunal no dirimió ni juzgó los hechos, limitándose a tomar alegaciones y documentos que le fueron sometidos; los que las partes le plantearon eran los materiales que no estaban en controversia, resolviendo entonces la sentencia sumaria conforme a derecho. Habiendo comparecido ambas partes, y estando en posición de resolver, procedemos a así hacerlo.

### III

La Regla 36 de Procedimiento Civil, 32 L.P.R.A. Ap. II, autoriza dictar sentencia sin necesidad de celebrar una vista en los méritos en aquellos casos en que no exista una genuina controversia de los hechos. *Nassar Rizek v. Salvador Hernández,* 123 D.P.R. 360 (1989); *Camaleglo Corp. v. Dorado Wings, Inc.,* 118 D.P.R. 20 (1986). En el proceso de determinar si dicha regla es el vehículo apropiado para disponer total o parcialmente de una demanda, nuestro más alto foro ha expresado que el sabio discernimiento es el principio rector para su uso, por lo que el tribunal debe cerciorarse de la total inexistencia de controversias de hechos y que el residuo sea la aplicación del derecho. *Consejo de Titulares del Condominio Parkside v. M.G.I.C. Financial Corp.,* 129 D.P.R. ___ (1991), **91 J.T.S. 54;** *Roig Commercial Bank v. Rosario Cirino,* 126 D.P.R. 613 (1990).

El tribunal, al considerar una moción de sentencia sumaria, analizará los hechos de la forma más favorable a la parte que se opone y dictará sentencia según proceda en derecho. *Colegio de Ing. y Agrimensores de Puerto Rico v. A.A.A. de Puerto Rico,* 132 D.P.R. ___ (1992), **92 J.T.S. 137**. Si no existe controversia real de hecho, la parte promovida no puede descansar meramente en aseveraciones generales contenidas en las alegaciones, sino que debe demostrar que tiene prueba para substanciar sus alegaciones o como sería en este caso para negar las mismas. *Corp. Presiding Bishop CJC of LDS v. Purcell,* 117 D.P.R. 714 (1986); *Flores v. Municipio de Caguas,* 114 D.P.R. 521 (1983).

En el caso ante nos ambas partes radicaron sendas mociones solicitando sentencia sumaria utilizando los hechos según alegados en la demanda a los meros fines de que se determinara que la aseguradora tenía el deber de prestar representación legal y de proveer cubierta. Los esposos Vera Vera no demostraron la existencia de controversias en cuanto a los hechos, tomando entonces el Tribunal aquellos que ambas partes plantearon que no estaban en controversia. Por lo tanto, no incurrió en error la ilustrada sala sentenciadora al determinar los hechos como lo hizo, limitándose a tomarlos tal y como las partes se los sometieron al plantearle que no estaban en controversia a los meros fines de determinar si la aseguradora debía prestar defensa legal y cubrir los daños. A los fines de una moción de sentencia sumaria el tribunal deberá presumir como ciertos todos los hechos no controvertidos que se le hacen constar. El primer error no fue cometido.

### IV

En el caso de autos, la aseguradora otorgó la póliza de seguro a favor del Dr. Enrique Ariel Vera. Según surge de dicho contrato de seguro, el mismo proveía cubierta para distintos riesgos, en cuanto a dos propiedades, que en el caso del apartamiento de Playa Dorada incluia específicamente cubierta para los riesgos descritos en *"Property Coverage"* como *"Personal Property", "Loss of Use"* y en el inciso de *"Liability Coverage"* como *"Personal Liability"* y *"Medical Payments".* Expresamente se excluye la cubierta de *"Personal Injury".* De estas cubiertas, la que presentaría interés a este caso es la de responsabilidad personal *("Liability Coverage")* o de responsabilidad general por ocurrencia.

El propio contrato establece que en caso de reclamaciones contra un asegurado por daños a la propiedad o daños corporales causados por una *"ocurrencia",* la aseguradora pagará hasta el límite de responsabilidad por los daños por los cuales el asegurado sea responsable y proveerá defensa legal, aun cuando la demanda no tenga base, sea falsa o fraudulenta. Véase pág. 72 del apéndice. El contrato indica además que la responsabilidad será por ocurrencia la cual se define en el contrato como:

*"...un accidente, incluyendo la exposición a condiciones que resulten, durante el período de vigencia del contrato en: (a) daños corporales; o (b) daños a la propiedad."* Traducción nuestra, véase pág. 116 del apéndice.

La cubierta de responsabilidad personal está a su vez sujeta a una serie de exclusiones, entre ellas, la exclusión número 1 de la Sección II de la póliza, la cual dispone que la cubierta no aplica a daños corporales o a daños a la propiedad que son esperados o deseados por el asegurado. Véase pág. 72 del apéndice. Además tal y como mencionáramos anteriormente, el contrato excluye expresamente de su cubierta los daños personales *("Personal Injury")* los cuales se definen como:

*"...un daño que surge de una o más de las siguientes ofensas: a.; b; c. invasión a la privacidad, desahucio ilegal o entrada ilegal".* Traducción nuestra, véase pág. 116 del apéndice.

Examinados los hechos no controvertidos para fines de la sentencia sumaria parcial y el contrato de seguro otorgado entre las partes, concluimos que la determinación del tribunal apelado es correcta. En *PFZ Properties, Inc. v. General Accident Insurance Co.*, 138 D.P.R. ___ (1994), **94 J.T.S. 116**, a la pág. 119, el Tribunal Supremo resumió la doctrina de la siguiente manera:

*"Los tribunales consistentemente han interpretado que la obligación de ofrecer representación legal al asegurado es aún más extensa que la obligación de indemnizar por daños en la medida en que éstos están cubiertos por una póliza de seguros. Pagán Caraballo v. Silva, supra, págs. 111-113; Vega v. Pepsi Cola Bot. Co., 118 D.P.R. 661, 668 (1987). El deber de la compañía aseguradora de proveer representación legal existe, en algunas circunstancias, aun cuando la aseguradora no esté obligada a indemnizar los daños causados por el asegurado a un tercero. Keeton, supra, pág. 991; J.A. Appleman, Insurance Law and Practice, St. Paul, Minn., West Publishing Co., 1979, Vol. 7C, Sec. 4683.01; G.J. Couch, Cyclopedia of Insurance Law, Rochester, Cooperative Publishing Co., 2nda ed., 1984, Vol. 14, Sec. 51:92; Pagán v. Caraballo, supra, págs. 111-112; Vega v. Pepsi Cola, supra, págs. 665-667. Cualquier duda sobre si existe el deber de asumir la defensa en un caso en particular, tendrá que ser resuelto a favor del asegurado. Id. Este tipo de obligación subsiste aunque la acción sea infundada, falsa o fraudulenta. Pagán v. Caraballo, supra, págs. 111-113; Vega v. Pepsi Cola Bot. Co., supra, pág. 665; Fernández v. Royal Indemnity Co., 87 D.P.R. 859, 863 (1963)."*

Igualmente indica que:

*"La obligación de la compañía aseguradora de asumir la representación legal surgirá cuando de una interpretación liberal de las alegaciones surja la posibilidad de que el asegurado está protegido por la póliza expedida, independientemente de cuál sea la adjudicación final del caso. No obstante, si las alegaciones claramente excluyen de la cubierta de la póliza los daños reclamados no podrá imponerse a la aseguradora el deber de defender."* Vega v. Pepsi Cola Bot. Co., supra, pág. 668. Fernández v. Royal Indemnity Co., supra, pág. 864. (Enfasis Suplido).

Al determinar la posibilidad de que el asegurado esté protegido por la póliza expedida y el deber de la compañía aseguradora de proveer representación legal nuestro más alto foro ha indicado que esa determinación se hará de conformidad a la interpretación que se le den a las alegaciones de la demanda y las propias cláusulas del contrato. *Martínez Pérez v. Universidad de Bayamón Inc. y American International Insurance Co.*, ___ D.P.R. ___ (1997), **97 J.T.S. 98.** Cuando los términos, condiciones y exclusiones de un contrato de seguros son claras, específicos y no dan margen a ambiguedades o diferentes interpretaciones, debe hacerse valer los mismos de acuerdo a la voluntad de las partes. *Quiñones López y Otros v. Manzano Pozas y Otros*, ___ D.P.R. ___ (1996), **96 J.T.S. 95**, a la pág. 1306.

Examinadas las alegaciones de la demanda instada por el matrimonio Flores Nieves y evaluadas a la luz de las cláusulas del contrato de seguro otorgado, concluimos que no existe controversia real sustancial sobre el hecho de que National no tiene obligación de proveerle representación legal a los esposos Vera Vera. Según surge de la referida demanda y de los hechos incontrovertidos de la solicitud de sentencia sumaria, la reclamación en compensación en daños está fundamentada, aun vistos en su forma más favorable para los demandados, en actos intencionales constitutivos en una entrada y desahucio ilegal, riesgo que no está asegurado en la póliza de National y que

definitivamente no constituyen una *"ocurrencia"* o accidente. En *PFZ Properties, supra,* a la pág. 122 el Tribunal Supremo definió el término *"ocurrencia"* como:

*"Dentro del campo especializado del derecho de seguros el término siniestro o ocurrencia (occurence) significa: **la manifestación concreta del riesgo asegurado,** que produce unos daños garantizados en la póliza hasta determinada cuantía. Siniestro es el incendio que origina la destrucción total o parcial de un edificio asegurado; el accidente de circulación del que resultan lesiones personales o daños materiales; el naufragio en el que se pierde un buque o las mercancías transportadas; el granizo que destruye una plantación agrícola, etc. Siniestro es, pues, un acontecimiento que, **por originar unos daños concretos previstos en la póliza,** motiva la aparición del principio indemnizatorio, obligado a la entidad aseguradora a satisfacer, total o parcialmente, al asegurado o a sus beneficiarios, el capital garantizado por el contrato. J. Castelo Matrán, Diccionario MAPFRE de Seguros, Madrid, Editorial MAPFRE, 1988, pág. 280. (Enfasis Suplido)....*
*"[S]i una cláusula de un contrato de seguros está redactada en términos de la ocurrencia de un siniestro (occurrence) su cubierta será más amplia que la provista por aquellas pólizas que se redacten de tal manera que se compensen daños causados por accidentes. Couch, supra, Vol. 11, Sec. 44.285, pág. 437. Albany Insurance Co. v. Companía de Desarrollo Comercial de P.R., Op. de 6 de febrero de 1990, 125 D.P.R ____., 90 J.T.S. 19. Aún así, el concepto ocurrencia (occurrence) **no provee cubierta por actos culposos e intencionales del propio asegurado.** Couch, supra, Vol. 11, Sec. 44.285, página 437; Keeton, supra, págs. 493-494, 518-519. Mas existe controversia sobre si las pólizas de seguro contemporáneas deben responder por los daños ocasionados por el asegurado cuando las consecuencias producto de las acciones intencionales no eran deseadas."* (Enfasis suplido).

En el caso ante nos ni las alegaciones, ni los hechos expuestos en las solicitudes de sentencia sumaria exponen actuaciones no intencionales de los apelantes que configuraran una *"ocurrencia"* y que originara unos daños concretos previstos en la póliza. El hecho de que los apelantes alegadamente no pudieran prever que sus actuaciones causarían daños a los demandantes y más específicamente en el embarazo de la demandante, no significa que los mismos no hayan sido intencionales. Los hechos ante nos no dan lugar a otra interpretación.

### DICTAMEN

Por los fundamentos anteriormente expuestos, confirmamos la determinación apelada y en consecuencia se desestima la causa de acción incoada contra National. Se devuelve el caso al hermano foro de Instancia para la continuación de los procedimientos.

Así lo pronunció y manda el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General