CC-2000-797                                                        1

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Maricarmen Ramos de Szendrey y otros<br>        Recurridos<br><br>                v.<br><br>Luis Felipe Colón Figueroa y otros<br>        Peticionarios | Certiorari<br><br>2001 TSPR 29 |

Número del Caso: CC-2000-797

Fecha: 06/marzo/2001

Tribunal de Circuito de Apelaciones:

Circuito Regional V

Juez Ponente:

Hon. Dolores Rodríguez de Oronoz

Abogado de la Parte Peticionaria:

Lcdo. Víctor M. Hernández González

Abogados de la Parte Recurrida:

Lcda. Maricarmen Ramos de Szendrey
Lcdo. Raúl Tirado Rodríguez

Materia: Sentencia Declaratoria y Cobro de Honorarios Profesionales

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Maricarmen Ramos de Szendrey
y otros

     Recurridos

        v.                            CC-2000-797 Certiorari

Luis Felipe Colón Figueroa
y otros

     Recurrentes

Opinión del Tribunal emitida por el Juez Asociado señor CORRADA DEL RÍO

San Juan, Puerto Rico, a 6 de marzo de 2001.

El 16 de julio de 1998 la Lic. Maricarmen Ramos de Szendrey y el Lic. Raúl Tirado Rodríguez (en lo sucesivo, "recurridos") instaron demanda de sentencia declaratoria y cobro de honorarios profesionales contra dos de los diez clientes a quienes habían representado en un complejo caso de ejecución de hipoteca que se dilucidaba en el Tribunal Superior de Ponce.[1] Estos son el Ing. Luis Felipe Colón Figueroa, la Sra. Marisely Colón Colón y la Sra. Sonia M. Colón Figueroa (en adelante "los Colón" o "los

---

[1] *Lourdes Figueroa Clavell y otros v. Pedro J. Nazario y otros*, caso civil núm. CS-1982-4494.

recurrentes"). La demanda sobre cobro se basa en una estipulación escrita de servicios profesionales en la cual se pactaron honorarios contingentes de un 10% del valor líquido real de los bienes que se le adjudicaran a los clientes en pago de su acreencia hipotecaria.

El 14 de septiembre de 1998 los recurrentes contestaron la demanda, alegando como defensa afirmativa, *inter alia*, que los servicios no se habían prestado; que la cantidad reclamada era irrazonable; que las cláusulas del contrato de servicios profesionales (en particular lo relativo al pago de honorarios) eran ambiguas; que los honorarios contingentes no se pactaron para el mejor beneficio de los clientes o su preferencia; y que parte de la deuda ya había sido satisfecha.

El 8 de febrero de 1999 los recurridos presentaron una moción para que se dictara sentencia sumaria parcial, al amparo de la Regla 36 de Procedimiento Civil, 32 L.P.R.A. Ap. III. En su moción los recurridos alegaron que no existe controversia de que la suma adeudada por los recurrentes es de 10% del valor líquido real de los bienes que le fueron adjudicados. Adujeron, además, que según lo estipulado en el contrato de servicios profesionales lo único que resta y procede es la designación de un tasador para que éste estime el valor líquido real de los terrenos adjudicados a los recurrentes como resultado del trámite del pleito de ejecución de hipoteca.

En apoyo de la moción de solicitud de sentencia sumaria parcial los recurridos acompañaron múltiples documentos acreditativos de los servicios profesionales prestados –incluyendo una copia de la carta-contrato que vincula a las partes– y otros documentos acreditativos de la renuencia de los recurrentes a satisfacer los honorarios reclamados. Solicitaron que el tribunal declarase sentencia sumaria a su favor, y que ordenase la procedencia de la designación de un tasador.

El 12 de febrero de 1999 los recurridos presentaron su oposición a la solicitud de sentencia sumaria parcial. En su oposición alegaron que aún quedan asuntos importantes por dilucidar y hechos sobre los cuales existe controversia, a saber, la validez de los honorarios contingentes pactados; si en efecto fueron prestados los servicios profesionales de los recurridos; la razonabilidad de los honorarios; y el vencimiento, liquidez y exigibilidad de lo reclamado. Solicitaron finalmente que se declarara sin lugar la moción de los recurridos por entender que "[e]stas determinaciones le corresponden al tribunal y no a un tasador". Apéndice, pág. 172. Sin embargo, los recurrentes no acompañaron documento alguno en oposición para controvertir los hechos alegados en la solicitud de los recurridos.

El 3 de septiembre de 1999, el Tribunal de Primera Instancia (TPI) celebró una vista para escuchar los argumentos de las partes sobre la procedencia de una sentencia sumaria.

El 15 de octubre de 1999 el TPI dictó una escueta "Resolución" declarando con lugar la solicitud de sentencia sumaria parcial, y concediéndole a las partes un término de treinta (30) días para que sometieran el nombre del tasador que determinaría el valor de los terrenos adjudicados a los recurrentes. El TPI señaló además una vista sobre el estado del caso para el 15 de diciembre de 1999.[2]

El 18 de enero de 2000 los recurridos presentaron una moción titulada "Solicitud de Orden en Aseguramiento de Sentencia" para embargar varios bienes inmuebles pertenecientes a los recurrentes, al amparo de la Regla 56.3 de Procedimiento Civil, *supra*. Solicitaron además que se dictara la procedencia del embargo sin vista previa, pero con la debida prestación de una fianza. Apéndice, pág. 174-179.[3] Los recurridos justificaron el carácter *ex parte* de su solicitud aduciendo que, conforme a la doctrina de *Rivera Rodríguez & Co. v. Lee Stowell, etc.*, 133 D.P.R. 881, 900 (1993), era procedente embargar de forma *ex parte*. Primero, porque alegadamente existían "circunstancias extraordinarias", según definidas en la jurisprudencia; y segundo, porque los recurridos demostraron "en los propios autos del caso la probabilidad de prevalecer en los méritos". Apéndice, pág. 178.

En cuanto a las "circunstancias extraordinarias" que alegadamente hacían meritorio el embargo *ex parte* solicitado por los recurridos, éstos alegaron que obtuvieron "información que les causa el fundado temor de que los [recurrentes] habrán de recurrir a la Corte de Quiebras antes que se haya obtenido un crédito asegurado . . .". *Íd.* Sin embargo, no acompañaron declaración jurada ni prueba alguna que sustentara su alegación.

---

[2] A continuación transcribimos la Resolución del TPI (Apéndice, pág. 173):

> "Examinadas las alegaciones de las partes, la Solicitud de Sentencia Sumaria Parcial presentada por la parte demandante, la Oposición presentada por la parte demandada, los exhibits presentado [*sic*] en apoyo de dichos escritos y los argumentos presentados en la vista del 3 de septiembre de 1999, resolvemos declarar **CON LUGAR** la solicitud de la parte demandante.
>
> Se le concede a las partes el término de 30 días para que someta el nombre del tasador que determinará el valor de los terrenos.
>
> Se señala vista sobre el estado del caso para el ***15 de diciembre de 1999*** a las 9:00 de la mañana.
>
> Notifíquese".

[3] En específico, los recurridos solicitaron la "anotación de embargo por la suma de $50,000.00 a anotarse, ... previa la prestación de fianza, sobre las participaciones o cualquier otro interés que los demandados tengan sobre las fincas especificadas en el párrafo 3 de este escrito, distribuida [*sic*] dichos $50,000.00 sobre las fincas según expuestas en el párrafo 4 . . .". Apéndice, pág. 179.

En cuanto al segundo punto, los recurridos adujeron que mediante la resolución de 30 de octubre de 1999 el foro de instancia supuestamente "adjudicó" el hecho de que los servicios requeridos mediante el contrato fueron en efecto prestados y que, por tanto, sólo "procede que éstos honren el contrato, incluyendo su fórmula para liquidar la deuda". *Íd.* Así, pues, los recurridos concluyen que la resolución del TPI es un documento público que "refleja la certeza de prevalecer" en los méritos. *Íd.*

Asimismo, los recurridos radicaron conjuntamente con su moción de solicitud de aseguramiento de sentencia, un proyecto de "Mandamiento" de embargo dirigido al Registrador de la Propiedad para que procediese a anotar el embargo solicitado, y una "Moción Consignando Fianza" de mil dólares ($1,000.00). Apéndice, pág. 180 y 181-185.

El mismo día en que los recurridos presentaron su solicitud de aseguramiento de sentencia, es decir el 18 de enero de 2000, el TPI firmó el proyecto de "Mandamiento" de embargo, concediendo a los recurridos lo solicitado. *Íd.*

En la orden del Tribunal se dispuso que los recurridos consignarían $1,000.00 como fianza, y que "una vez [se] presente para inscripción en el Registro de la Propiedad el correspondiente Mandamiento" los recurridos deberían notificar inmediatamente a los recurrentes con una copia de dicha orden. Se dispuso además que los recurrentes tendrían derecho a solicitar una vista, "de así estimarlo necesario". Apéndice, pág. 185.

Inconformes con la determinación del foro de instancia, el 11 de febrero de 2000 los recurrentes presentaron recurso de certiorari ante el Tribunal de Circuito de Apelaciones (TCA), alegando que el mandamiento de embargo emitido por el TPI violó su derecho a un debido proceso de ley constitucional, ya que se ordenó a raíz de una moción *ex parte* y sin la previa celebración de una vista. Solicitaron que la orden se dejara sin efecto.[4] Por su parte, el 4 de mayo de 2000, los recurridos presentaron una moción de desestimación alegando que el TCA carecía de jurisdicción para entender el asunto. Apéndice, pág. 254.

El 25 de mayo de 2000, el TCA dictó sentencia confirmando al foro de instancia. En su resolución, el TCA concluyó, primero, que al declarar la solicitud de sentencia

---

[4] No obstante, un día antes de presentar la petición de certiorari ante el TCA, los recurrentes radicaron ante el TPI una moción solicitando que se dejase sin efecto la resolución de 15 de octubre de 1999 y, a su vez, notificaron un segundo interrogatorio a los recurridos. Apéndice, pp. 186 y 195. A ésta se opusieron los recurridos por escrito el 14 de marzo de 2000. Apéndice, pág. 199.

El 9 de mayo de 2000 el foro de instancia dictó resolución declarando "no ha lugar a la Moción Sobre Relevo de Resolución", y

sumaria parcial con lugar el 15 de octubre de 1999, el TPI resolvió que no existía controversia sobre la existencia de una obligación contractual, y que a raíz de esta obligación los peticionarios venían obligados a satisfacer a los recurridos el 10% del valor líquido real de los terrenos adjudicados en el pleito de ejecución de hipoteca ya finalizado. Añadió, además, que los peticionarios no solicitaron reconsideración de la resolución ni recurrieron de la misma, "por lo que advino final".

Por tal razón, el TCA concluyó que la resolución del TPI de 15 de octubre de 1999 se convirtió en un "documento fehaciente que acredita la obligación" de los recurrentes, cumpliendo así con una de las excepciones reconocidas en *Rivera Rodríguez & Co. v. Lee Stowell*, *supra*. Por consiguiente, el TCA concluyó que el foro de instancia no erró al dictar la orden sin celebrar previamente una vista.[5]

Inconformes, los recurrentes acudieron ante nos el 25 de septiembre de 2000 mediante recurso de certiorari planteando como único error lo siguiente:

> Cometió un error el Tribunal de Circuito de Apelaciones al concluir que una Resolución del Tribunal de Primera Instancia . . . constituía una sentencia sumaria y que ésta era prueba fehaciente de la obligación contractual de los demandados-peticionarios de pagar honorarios de abogado a los demandantes-recurridos, y a base de ello confirmar una Orden . . . *ex parte* de embargo en aseguramiento de sentencia.

El 13 de noviembre de 2000 emitimos resolución concediéndole a la parte recurrida un término de treinta (30) días contados a partir de la notificación de esta Resolución, para que compareciese y mostrase causa por la cual no deberíamos expedir el auto solicitado por los recurrentes y dictar sentencia revocatoria de la resolución del Tribunal de Circuito de Apelaciones de 25 de mayo de 2000. Habiendo los recurridos comparecido el 5 de diciembre de 2000, procedemos a resolver.

II

Las Reglas de Procedimiento Civil reconocen el embargo como uno de los remedios provisionales que puede dictar un tribunal para asegurar la efectividad de una sentencia. Véanse las Reglas 56.2 a 56.4 de Procedimiento Civil, *supra*. Este remedio provisional puede ser concedido en todo pleito civil, antes o después de dictarse la sentencia, mediante solicitud de una parte interesada.

Hemos establecido que, como regla general, en todo caso en que se solicite algún remedio provisional como lo es un embargo *—y antes de que el tribunal haga una determinación al respecto—* es indispensable que (*previamente*) la parte adversa sea notificada y que una vista sea celebrada. Adicionalmente, los tribunales deben

---

sin más, ordenó la continuación de los procedimientos. Apéndice, pág. 207.

[5] Esta sentencia del TCA fue notificada el 1 de junio de 2000. El 16 de junio de 2000 los recurrentes presentaron una Moción de

exigir la prestación de una fianza. *Rivera Rodríguez & Co. v. Lee Stowell*, *supra*, pág. 896; Reglas 56.2 y 56.3 de Procedimiento Civil, *supra*.

Ahora bien, hemos reconocido, como *excepción* a esa regla, que es permisible que un tribunal expida una orden de embargo *ex parte* –esto es, sin notificación a la parte adversa y vista previa— siempre que el reclamante preste una fianza *suficiente para responder por todos los daños y perjuicios* que se puedan causar como consecuencia del aseguramiento. *Rivera Rodríguez & Co. v. Lee Stowell*, *supra*, pág. 897. No obstante, la aplicación de esta excepción sólo tendrá lugar bajo tres supuestos: 1) cuando el reclamante ha alegado o demostrado tener un previo interés propietario sobre la cosa embargada; 2) cuando se han alegado o demostrado la existencia de circunstancias extraordinarias; 3) o cuando se ha alegado o demostrado la probabilidad de prevalecer mediante "prueba documental fehaciente" de la cual se desprenda que la deuda es una líquida, vencida y exigible. *Rivera Rodríguez & Co. v. Lee Stowell*, *supra*, pp. 899-900. "Únicamente en estas situaciones es que un tribunal podrá posponer la celebración de dicha vista hasta *después* de trabado el embargo". *Íd.*, pág. 900.

En el caso de autos, los recurridos invocaron la segunda y tercera excepción para lograr obtener una orden de embargo sin previa notificación o vista. Es decir, alegaron que la orden de embargo era procedente debido a que alegadamente tienen probabilidad de prevalecer, y la sentencia del TPI de 15 de octubre de 1999 es "prueba documental fehaciente" de ello. Adujeron además que "obtuvieron información" que les causaba el temor de que los recurrentes acudirían a la Corte de Quiebras, y según ellos, ésta era la "circunstancia extraordinaria" que hacía meritorio la orden de embargo sin previa notificación o vista.

Examinemos la procedencia de estas alegaciones.

### III

En *Feliciano Figueroa* et al v. *Toste Piñero*, 134 D.P.R. 909 (1993) resolvimos que una **sentencia final** dictada en un caso penal es un "documento público fehaciente" para efectos de la excepción establecida en el caso de Rivera *Rodríguez & Co. v. Lee Stowell, etc*. Ello, debido a que es un documento autorizado por un funcionario público competente (*i.e.*, un juez) que tiene el deber de cumplir con las solemnidades requeridas por ley. *Feliciano Figueroa* et al v. *Toste Piñero*, *supra*, pág. 913.

Ahora bien, debemos resolver si la norma de *Feliciano Figueroa* et al v. *Toste Piñero*, *supra*, es aplicable al caso de autos. Por tanto, es necesario considerar específicamente si la resolución dictada por el TPI el 15 de octubre de 1999 debe (o puede) ser considerada como una "sentencia final".

---

Reconsideración, la cual fue declarada sin lugar mediante resolución dictada el 15 de agosto de 2000, pero notificada diez días más tarde.

Sabido es que una sentencia "final" es aquella que pone término a una reclamación judicial y contra la cual cabe recurso de apelación. *U.S. Fire Ins. Co. v. A.E.E.*, 151 D.P.R. ___ (2000), res. el 13 de septiembre de 2000, 2000 T.S.P.R. 133, 2000 J.T.S. 146; *Pueblo v. Central Cambalache*, 59 D.P.R. 60 (1941). Las Reglas 43 y 38 de Procedimiento Civil, *supra*, establecen que una sentencia debe ser final para ser apelable o revisable.

Hemos indicado que en casos donde hay múltiples reclamaciones los tribunales pueden adjudicar todas las reclamaciones de una vez, al final del pleito; o pueden, a su discreción, seguir un procedimiento especial para dictar sentencia parcial final adjudicando la totalidad de una de las varias reclamaciones que una parte podría tener. *U.S. Fire Ins. Co. v. A.E.E.*, *supra*.

Las sentencia parciales no se convierten en finales *sua sponte*. Para que se conviertan en finales el juez debe usar un lenguaje específico en su fallo; a saber, el juez debe 1) concluir que no hay razón que justifique seguir el juicio sin dictar sentencia en relación con esa parte; y 2) ordenar expresamente que se registre y archive la sentencia. *U.S. Fire Ins. Co. v. A.E.E.*, *supra*.

Haciendo esto, el tribunal le imparte carácter de finalidad al dictamen mediante esas conclusiones especiales y esa sentencia podrá adquirir firmeza con el transcurso del tiempo. R. Hernández Colón, *Derecho Procesal Civil* § 4107, p. 282 (1997). Si así lo hace, tendrá carácter de sentencia final, y si una parte interesa apelar tiene que hacerlo dentro de los 30 días siguientes a la notificación del archivo en autos. *Asociación de Propietarios v. Santa Bárbara Co.*, 112 D.P.R. 33 (1982). De lo contrario, la "sentencia" es, en efecto, una "resolución" interlocutoria[6] que no termina el pleito, y estará sujeta a reconsideración en cualquier momento antes de dictarse sentencia adjudicando todas las reclamaciones. *Véase* Regla 43.5 de Procedimiento Civil, *supra*.

Asimismo, lo dispuesto en la Regla 43.5 sobre sentencias parciales finales es aplicable sólo en una de dos situaciones, o en ambas: 1) en pleitos donde se estén planteando múltiples reclamaciones, y el dictamen del tribunal adjudica menos del

---

[6] Hemos indicado que, para efectos de la Regla 43.3 de Procedimiento Civil, no es realmente determinante cómo

continúa...

...6 continuación

un tribunal denomine sus fallos, o el lenguaje que utilice. *Díaz v. Navieras de P.R.*, 118 D.P.R. 297, 301 (1987). Es decir, que en ausencia de la referida conclusión especial y una orden expresa de registro y archivo, cualquier orden o cualquier otra forma de decisión —**no importa cómo se denomine**— que adjudique menos del total de las reclamaciones o los derechos y obligaciones de menos del total de las partes, no terminará el pleito con respecto a ninguna de las reclamaciones o partes y la orden u otra forma de decisión estará sujeta a reconsideración por el tribunal que la dicte en cualquier momento antes de registrarse sentencia adjudicando todas las reclamaciones y los derechos y obligaciones de todas las partes. *Asociación de Propietarios v. Santa Bárbara Co.*, 112 D.P.R. 33, 39-40 (1982).

total de las reclamaciones; 2) o en casos comprendidos por múltiples partes, y el tribunal resuelve los derechos de una de las partes. *U.S. Fire Ins. Co. v. A.E.E., supra*. La Regla 43.5 "[n]o es aplicable, sin embargo, cuando lo que resuelve el tribunal es sólo una controversia, aunque esta sea separable de las restantes". *Camaleglo v. Dorado Wings, Inc.,* 118 D.P.R. 20 (1986); José. A. Cuevas Segarra, Tratado de Derecho Procesal Civil, Tomo II, pág. 703, Publicaciones JTS (2000). Por tanto **no sería "final" un dictamen interlocutorio del tribunal que sólo resuelve una controversia en el caso; y al no ser "final", no puede ser ejecutable.** *Díaz v. Navieras de P.R.,* 118 D.P.R. 297 (1987).

En el caso de autos, concluimos que la "resolución" dictada por el TPI el 15 de octubre de 1999 **no adquirió carácter de "final"** por no haberse incluido en ella el lenguaje exigido por la Regla 43.5 de Procedimiento Civil, *supra*. Más aun, el dictamen interlocutorio del foro de instancia no puede considerarse "final" debido a que lo resuelto por el tribunal allí fue sólo una controversia del caso, aunque haya sido separable de las restantes. *Camaleglo v. Dorado Wings, Inc., supra.*

Por lo tanto, dicha resolución del foro de instancia estará sujeta a reconsideración en cualquier momento antes de dictarse sentencia adjudicando finalmente todos los planteamientos jurídicos del pleito. R. Hernández Colón, *supra*, pág. 283.

Debido a que la resolución dictada por el TPI el 15 de octubre de 1999 no adquirió carácter de "final", concluimos que la norma de *Feliciano Figueroa* et al v. *Toste Piñero*, *supra*, no puede ser aplicable al caso de autos. En consecuencia, forzoso es concluir que la resolución dictada por el foro de instancia **no** es un "documento público fehaciente" para efectos de la excepción establecida en el caso de *Rivera Rodríguez & Co. v. Lee Stowell, etc.*, *supra*.

Ahora bien, en *Rivera Rodríguez & Co. v. Lee Stowell, etc.*, *supra*, pág. 900, indicamos además que, como excepción, un tribunal podrá celebrar una vista de embargo *ex parte únicamente* cuando de "prueba documental fehaciente" surja que la deuda reclamada es una **"líquida, vencida y exigible"**. (Énfasis suplido.) Por lo tanto, aún bajo el supuesto de que la resolución del TPI constituye "prueba documental fehaciente", debemos concluir que la vista de embargo *ex parte* celebrada no fue legal ya que la deuda reclamada por los recurridos no es líquida, vencida y exigible. Una deuda es "líquida" cuando la cuantía de dinero debida es "cierta" y "determinada". *Véase* M.A. del Arco Torres y M. Pons González, *Diccionario de Derecho Civil*, Tomo Segundo, pág. 168 (1984); *Freeman v. Tribunal Superior*, 92 D.P.R. 1, 25 (1965).

En el caso de autos resulta obvio que la deuda alegada por los recurridos no es cierta ni determinada. Lo que se dispuso en la carta-contrato fue que los recurridos recibirían el 10% del valor líquido real de los bienes que se adjudicaron

a los recurrentes. Los propios recurridos han insistido que se nombre un tasador cuanto antes, *precisamente* para que **se haga una determinación del valor líquido real** de los terrenos en cuestión. No se sabe en este momento el monto de los honorarios adeudados, mientras no se sepa el valor tasado de los bienes adjudicados a los recurrentes. Así, pues, resulta evidente que la deuda alegada por los recurridos aún no es líquida. En consecuencia, no procedía la concesión del remedio *ex parte* y sin vista previa. *Rivera Rodríguez & Co. v. Lee Stowell, etc.*, *supra*, pág. 900.

Por último, los recurridos alegaron que "obtuvieron información" que les causaba "temor" de que los recurrentes acudirían a la Corte de Quiebras. Claramente, los recurridos intentan valerse de esa aseveración para persuadirnos de que están presentes las "circunstancias extraordinarias" que justifican una orden de embargo *ex parte*. Sin embargo, del expediente no surge tan siquiera alguna declaración jurada que sustente el alegado "temor" de los recurridos.

Debemos aclarar que si bien es cierto que en el caso de *Rivera Rodríguez & Co. v. Lee Stowell, etc.*, *supra*, indicamos que la existencia de "circunstancias extraordinarias" puede justificar una orden de embargo *ex parte*, ello no significa que un tribunal puede concluir, sin más, que existen "circunstancias extraordinarias" sólo porque una parte lo afirma. El mero acto de aseverarlo no puede ser suficiente justificación para que a una parte se le niegue un derecho de rango constitucional, y que se le embargue una propiedad *ex parte*, máxime cuando la alegación está desprovista de evidencia *prima facie* alguna, o (por lo menos) de alguna declaración jurada. Ciertamente, la Constitución exige del embargante una alegación de "circunstancias extraordinarias" más fundamentada y razonable.[7]

Por tanto, concluimos que el acto de autorizar un "Mandamiento" de embargo el 18 de enero de 2000 por el TPI, sin la previa notificación a la parte recurrente y la celebración de una vista adversativa fue ilegal. *Rivera Rodríguez & Co. v. Lee Stowell, etc.*, *supra*.[8] Forzoso es pues concluir que erró el Tribunal de Circuito de Apelaciones al confirmar al foro de instancia.

---

[7] Somos conscientes de que la celebración de una vista previa impone al litigante interesado en el embargo un costo de tiempo y esfuerzo. Sabemos también que sería más eficiente, quizás, no tener que celebrar una vista. Sin embargo, el interés en la eficiencia y economía de tiempo no pueden, en balance, prevalecer sobre el derecho constitucional al debido proceso de ley. El debido proceso de ley constitucional no pretende promover los valores de eficacia ni pretende proteger todos los valores humanamente deseables o concebibles: pretende proteger los intereses propietarios de las personas contra quienes se solicita embargar. *Véase Fuentes v. Shevin*, 407 U.S. 67, 90-91, nota núm. 22 (1972).

[8] Debemos añadir, además, que el embargo *ex parte* ordenado por el TPI afectó a un total de **ocho (8) fincas**, propiedades de los recurrentes. Éstas constan respectivamente de ochenta y una cuerdas (81); doscientas veinte y siete cuerdas (227); noventa y tres cuerdas

Se revoca la sentencia del Tribunal de Circuito de Apelaciones y se deja sin efecto el mandamiento de embargo

del foro de instancia de 18 de enero de 2000. Se devuelve el caso al Tribunal de Primera Instancia para que proceda según lo aquí dispuesto.

                              BALTASAR CORRADA DEL RÍO
                                   JUEZ ASOCIADO

---

(93); treinta cuerdas; cuatro cuerdas (4); diecinueve cuerdas (19); cinco cuerdas (5); y ciento noventa cuerdas (190). Orden de embargo, Anejo B, Apéndice, pp. 11-15. A nuestro modo de ver, es altamente cuestionable si la fianza de mil dólares ($1,000.00) consignada judicialmente por los recurridos y aceptada por el tribunal de instancia tan apresuradamente pueda ser considerada como "fianza suficiente" para responder "por todos los daños y perjuicios que se puedan causar como consecuencia del aseguramiento". *Rivera Rodríguez & Co. v. Lee Stowell, etc.*, *supra*, pág. 897.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Maricarmen Ramos de Szendrey
y otros

     Recurridos

        v.                       CC-2000-797 Certiorari

Luis Felipe Colón Figueroa
y otros

     Recurrentes


SENTENCIA

San Juan, Puerto Rico, a 6 de marzo de 2001.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, se dicta Sentencia revocando la sentencia del Tribunal de Circuito de Apelaciones y se deja sin efecto el mandamiento de embargo del foro de instancia de 18 de enero de 2000. Se devuelve el caso al Tribunal de Primera Instancia para que proceda según lo aquí dispuesto.

Lo pronunció y manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Hernández Denton no intervino.


                            Isabel Llompart Zeno
                          Secretaria del Tribunal Supremo